BARTHOLOMEW & COMPANY v. S. L. PARRISH.

(Filed 19 September, 1923.)

**Verdicts—Appeal and Error—Compromise—New Trials.**

The jury should arrive at their verdict upon the evidence, under their oaths, and upon discussion a juror should yield in his view only upon being convinced of its error, and not reach a unanimity otherwise;

and a verdict clearly appearing to be a compromise, and so stated therein, is a compromise verdict, not allowed by law, and should be set aside after its rendition, and a new trial ordered.

APPEAL by defendant from *Kerr, J.,* at April Term, 1923, of NASH.

This is a civil action brought by the plaintiffs against the defendant to recover the sum of $366.51 for goods and merchandise sold to Spencer Parrish, a tenant of the defendant, upon the credit of the defendant. The defendant admitted that he authorized the plaintiff to sell his tenant Spencer Parrish, goods and merchandise upon his credit not exceeding the amount of $100.

From the evidence it appears that the defendant went to Russell Bartholomew, who was in charge of plaintiff's business, and said to him, "My tenant, Spencer, wants you to furnish him some goods; go ahead and do so and I will pay for them"; or, to use the exact language, "let him trade and I will see that it is paid." Bartholomew knew the defendant, and that he was solvent, and agreed that he would accommodate Spencer, the nephew of the defendant, for what he wanted; and he did sell and deliver to him goods and merchandise amounting to $366.51.

The defendant denies that he made any agreement for so large an amount, but alleges that he told Bartholomew, "This boy (meaning Spencer) wants $50 or $75. Don't let it exceed $100, and I will be responsible for it."

The following issue was submitted to the jury:

"What, if any amount, is plaintiff entitled to recover of the defendant for merchandise sold Spencer Parrish, upon the defendant's credit for the year 1920? Answer: ———."

The court below, after reciting the contentions of the parties, charged the jury as follows:

"As to this issue, the burden is on Mr. Bartholomew to satisfy you as to his contention by the evidence and by the greater weight of the evidence. If you are satisfied from the evidence and by the greater weight of the evidence that Sidney Parrish went to Bartholomew's place of business and told him to sell Spencer Parrish anything he wanted at that time or at any other time upon the credit of Sidney Parrish, Bartholomew reserving the right and insisting on that right to collect out of Sidney Parrish and nobody else, and that they did under that contract sell him $366.51, then it would be your duty, if you find these facts by the evidence and by the greater weight of the evidence, to answer the issue $366.51.

"If you are not satisfied from the evidence and by the greater weight of the evidence, then you would answer this issue one hundred dollars, because that is the amount Mr. Parrish says he is willing to pay."

In answer to the issue, the jury rendered a verdict in word and figures as follows: "Compromise, $283.25."

After the rendition of the verdict, and before signing the judgment, the court of its own motion struck out the word "compromise." The defendant moved to set aside the verdict as being contrary to and inconsistent with the evidence in the case, and contrary to the charge of the court, and as being a compromise verdict, insufficient and illegal.

After the verdict, and the jury had been excused, and after plaintiffs and their attorneys had left the courthouse, several of the jurors, by request of defendant's counsel, came into court room in open court and, in answer to question, stated that the verdict was reached as a compromise.

The court then signed the judgment set out in the record.

Defendant filed exceptions and appealed to the Supreme Court.

*E. B. Grantham and Harold D. Cooley for plaintiffs.*

*W. H. Yarborough, Finch & Vaughan, Murray Allen and W. B. Snow for defendant.*

CLARKSON, J. The sole question in the case presented by the exceptions is whether the verdict rendered was illegal and the court erred in not setting it aside.

The following issue was submitted to the jury:

"What, if any, amount is plaintiff entitled to recover of the defendant for merchandise sold Spencer Parrish, upon the defendant's credit for the year 1920?" The jury answered the issue, after the word "Answer": "Compromise $283.25."

It is always for the best interest of society that those who have differences should try and amicably adjust them. When parties decide to litigate their rights, they have an orderly way to proceed in the courts established for this purpose.

In this case the plaintiffs and defendant have seen fit to contest their rights in the court. The issue was framed and presented to the jury. The witnesses were required to be sworn. The jury that tried the case was sworn and took the following oath: "You and each of you swear (or affirm) that you will well and truly try all civil actions which shall come before you during this term, and true verdicts give according to the evidence: So help you God." The word verdict is derived from the Latin *vere dictum*—a true declaration.

"A verdict which is reached only by the surrender of conscientious convictions on one material issue by some jurors in return for a relinquishment by others of their like settled opinion on another issue, and the result is one which does not command the approval of the whole

BARTHOLOMEW *v.* PARRISH.

panel, is a compromise verdict. Such a verdict is improper and should be set aside as being founded on conduct subversive of the soundness of trial by jury. Thus in a prosecution of joint defendants, where certain of the jurors believe that all of the defendants should be convicted and others that all should be acquitted, a verdict reached by an agreement by which the acquittal of some is exchanged for the conviction of others is a compromise verdict and as such cannot stand. And it has been held that where, in an action for personal injuries the severity of the injury was beyond contention, a verdict for a grossly inadequate sum was in itself almost a conclusive demonstration that it was the result, not of justifiable concession of views, but of improper compromise of the vital principles which should have controlled the decision. However, while the jury cannot go to the extent of bartering their convictions in order to reach an agreement, the law contemplates that they shall by their discussions harmonize their views if possible. Therefore, a verdict which is the result of real harmony of thought growing out of open-minded discussion between jurors with a willingness to be convinced, with a proper regard for opinions of others and with a reasonable distrust of individual views not shared by their fellows, and a fair yielding on one reason to a stronger one, each having in mind the great desirability of unanimity both for the parties and for the public, is not open to criticism." 27 R. C. L., 850.

Where it is clear that the verdict of a jury is based on a compromise of the differences of opinion of its individual members, it should be set aside. The law contemplates that the jurors "shall, by their discussions, harmonize their views if possible, but not that they shall compromise, divide, and yield for the mere purpose of an agreement." 22 Enc. P. and P., 855.

"Where the verdict which the jury return cannot be justified upon any hypothesis presented by the evidence, it ought obviously to be set aside. Thus, if a suit were brought upon a promissory note, which purported to be given for $100, and the only defense was that the defendant did not execute the note, and the jury should return a verdict for $50 only, it would not be allowed to stand; for it would neither conform to the plaintiff's evidence nor to that of the defendant. It would be a verdict without evidence to support it; and it is not to be tolerated that the jury should thus assume, in disregard of the law and evidence, to arbitrate the differences of parties, or to decide according to some supposed natural equity, which in reality is merely their own whim." 2 Thompson on Trials, sec. 2606.

In the instant case it will be seen that the sum of $283.25 is arrived at by taking one-half of the $366.51 and adding to it $100, the sum admitted by the defendant to be due to the plaintiffs.

In *Nall v. McMath,* 177 N. C., 183, *Allen, J.,* said *obiter dictum:* "We would not be understood as holding that the jury has the right to compromise the claims of litigants, and if it clearly appeared that they had done so and had returned the verdict with nothing to sustain it, and that there was no notice of the purpose to do so, the parties would be entitled to relief."

From the judge's charge and the evidence, the differences between the parties were irreconcilable, and the jury so understood and returned the verdict "Compromise $283.25." We do not mean in the least to criticize the jury.. We have no doubt that they acted with the highest motives, but they did what the law does not permit in such cases.

The verdict of a jury is a solemn deliberation. The system is often spoken of as the "Bulwark, or palladium, of our liberty." In the centuries of its existence no better form has ever been suggested, or perhaps ever will be, for the trial of causes. When a verdict is rendered, it imports verity. What is done in the jury room should be jealously guarded by the jurors who try the case, and it is doubtful propriety to discuss their deliberations outside of the jury room after the verdict is rendered. Their verdict should be above suspicion. "The people of the American Union, and especially the people of this State, have, ever since their existence as a people, regarded and treated this provision (a trial by jury) in their organic law as an essential feature in free government, and as one of the fundamental bulwarks of their civil and political liberty." *S. v. Holt,* 90 N. C., 749, at p. 751.

*Merrimon, J.,* in *Johnson v. Allen,* 100 N. C., 131, has well said: "Evidence to impeach the verdict of the jury must come from sources other than the jurors themselves. Otherwise, motions for a new trial would frequently be made, based upon incautious remarks of jurors, or declarations by them, procured to be made by the losing party, or some person in his interest, and thus the usefulness and integrity of trial by jury would be impaired. Moreover, controversies thus arising would lead to unseemly confusion." *S. v. Tilghman,* 11 Ired., 513; *S. v. Smallwood,* 78 N. C., 560; *S. v. Brittain,* 89 N. C., 481; *S. v. Royal,* 90 N. C., 755.

*Stacy, J.,* says, in *Rankin v. Oates,* 183 N. C., 517: "The court was without authority to reverse the jury's finding on the second issue, answer it himself, and then render judgment on the verdict as amended." *Garland v. Arrowood,* 177 N. C., 373; *Sprinkle v. Wellborn,* 140 N. C., 163; *Hemphill v. Hemphill,* 99 N. C., 436.

In the present case the jury said by their verdict that it was a "compromise." Under the court's charge and the law this could not be done. Because of this error a new trial is ordered.

New trial.