W. J. BUNDY, GUARDIAN OF J. W. SUTTON, SR. (J. W. SUTTON, SUBSTITUTED IN HIS OWN BEHALF), v. SARAH E. SUTTON, DEPOSED GUARDIAN OF J. W. SUTTON, SR., L. W. TUCKER, RECEIVER OF J. W. SUTTON PROPERTY, JOE SUTTON, GUY SUTTON, W. H. WOOLARD, TRUSTEE, GREENVILLE BANKING AND TRUST COMPANY, H. L. HODGES, F. C. HARDING, TRUSTEE, VIRGINIA-CAROLINA CHEMICAL CORPORATION, F. M. WOOTEN, TRUSTEE, AND NORA PATRICK AND J. H. WALDROP.

(Filed 12 December, 1934.)

**1. Trial G e—Trial court has no power to amend the verdict of the jury.**

The parties have a substantial right in the verdict of the jury, and while the trial court has the power to set aside the verdict in his discretion or as a matter of law to prevent miscarriage of justice, or to allow the jury to correct their verdict with his approval, or to dismiss the action irrespective of the verdict where the plaintiff is not entitled to

recover on any aspect of the case, the trial court does not have the power to reverse or amend the verdict of the jury by "setting it aside" as to some of the defendants as being against the weight of the evidence while rendering judgment against the other defendants upon the verdict.

**2. Trial G b—**

The verdict of the jury will be construed in the light of the pleadings and charge of the court.

**3. Appeal and Error J e—Amendment of verdict by trial court held not harmless error under facts of this case.**

In this case the jury found that nine of the defendants entered a conspiracy to suppress the bidding at the foreclosure sale of plaintiff's land in order that the two ·defendants to whom the last and highest bid was transferred, and to whom the property was finally conveyed, might acquire the property at a grossly inadequate price, and found in a separate issue that the two defendants to whom the land was finally conveyed conspired together to this end. The trial court amended the verdict by "setting it aside" as to the trustee in the deed of trust foreclosed, and as to certain other of the defendants, on the ground that as to them the verdict was against the weight of the evidence. Judgment was entered that the transferees of the title held title as trustees *ex maleficio* for the benefit of plaintiff: *Held*, construing the verdict in the light of the pleadings and charge, the amendment of the verdict by the court must be held for prejudicial error, since it cannot be ascertained that the jury would have found the transferees guilty of conspiracy when title to the property was outstanding in the trustee who sold same on the open market with no agreement, express or implied, that the transferees should become the purchasers.

CIVIL ACTION, before *Frizzelle, J.*, at March Term, 1934, of PITT.

Prior to 1927 the plaintiff J. W. Sutton, Sr., ·was the owner of certain land in Pitt .County, containing approximately 350 acres, and ten teams, farming implements necessary to cultivate a twenty-horse farm, and had on hand approximately 100 bales of cotton. In addition, it was alleged that he had approximately $3,000.00 in cash on deposit in the National Bank of Greenville. In the fall of 1927 the mind of J. W. Sutton, Sr., became impaired. Thereupon his wife, the defendant Sarah E. Sutton, was duly appointed guardian for her husband, and she undertook as such to operate the farm. Mr. and Mrs. Sutton had several children, to wit, Joe Sutton, Guy Sutton, Charlie Sutton, Bessie Willoughby, Fannie Lloyd, James Sutton, Clara Todd, and Roy Sutton. In the spring of 1930 Mrs. Sarah Sutton was removed as guardian and Mr. L. W.. Tucker was appointed receiver of the estate of the incompetent in May, 1930. After Tucker was appointed receiver, by virtue of an order of court he was authorized and directed to borrow the sum of $6,500.00, to be used in operating and cultivating the lands of J. W. Sutton, incompetent. Thereupon the receiver executed and delivered a deed of trust to W. H. Woolard, trustee, for the Greenville Banking and Trust Company. This deed of trust is dated 23 February, 1931, and

covered land, crops, "with all teams, including twelve mules now on said farm, and farming utensils." The deed of trust to Woolard, trustee, contained a power of sale in the event of default and was duly registered. The note for $6,500.00 was endorsed by the defendant H. L. Hodges.

The receiver paid approximately $3,000.00 of said indebtedness, but was unable to pay the remainder, amounting to $3,500. Thereafter, in January, 1932, the defendant Woolard, trustee, under the deed of trust heretofore mentioned, advertised the land and personal property for sale. At the sale the defendant Nora Patrick, through her attorney, the defendant F. M. Wooten, appeared and bid the sum of $2,597.00 for the land. Within ten days after such sale the defendant Virginia-Carolina Chemical Company raised the bid as provided by law, and the land was readvertised and sold on 10 March, 1932, at which sale the defendant J. H. Waldrop, cashier of the Greenville Bank and Trust Company, bid the sum of $2,750.00. No increased bid was placed upon the purchase price and Waldrop having assigned his bid to Joe Sutton and Guy Sutton, Woolard, trustee, executed and delivered to Joe Sutton and Guy Sutton a deed for the land. The personal property was sold on 2 February, 1932, and was purchased by W. H. Dail, Jr., for the sum of $310.00.

Thereafter, on 28 March, 1932, Joe Sutton and Guy Sutton executed and delivered to W. H. Woolard, trustee, a deed of trust upon the land to secure a note of $3,331.83, payable to H. L. Hodges, at the Greenville Banking and Trust Company. This deed of trust covered the land and personal property theretofore sold by Woolard, trustee. On the same date the said Joe Sutton and Guy Sutton executed and delivered to F. M. Wooten and F. C. Harding a mortgage securing a note of $1,750.00 to Nora Patrick, a note for $450.00 to H. L. Hodges, and a note for $2,153.70 to the Virginia-Carolina Chemical Company.

Subsequently, plaintiff W. J. Bundy was duly appointed guardian of J. W. Sutton, Sr., and instituted the present action against all the defendants, alleging in substance that all the defendants named entered into a conspiracy and "did unlawfully, illegally, and fraudulently collude and connive together to the end that the appeal from the order dissolving the restraining order should be abandoned, that the trustee, W. H. Woolard, should proceed with the sale of the lands, that the said J. H. Waldrop should place a bid on the land just a little higher than the raised bid of the Virginia-Carolina Chemical Corporation, that in time he should transfer and assign his bid to Joe and Guy Sutton, for whom in fact he was to do the bidding, and that none of the other defendants would place any bid on said lands, and that they would suppress the bidding on said lands and let the said Joe and Guy Sutton bid same in as aforesaid, that the Greenville Banking and Trust Com-

pany would immediately, upon closing of the sale, accept from the said Joe and Guy Sutton note, or notes, secured by deed of trust on said lands for the full amount of the indebtedness at the time of the sale, and carrying same for them, that the said Joe and Guy Sutton, after executing to the bank said paper for the amount of the bid, or what was due at the time of the sale on note held by the bank, would then execute to F. M. Wooten and F. C. Harding, trustees, a deed of trust on said lands to secure the payment of notes for the amount claimed to be owing to Virginia-Carolina Chemical Company and Nora Patrick by Sarah E. Sutton, guardian of J. W. Sutton, and that they would further secure the amount claimed to be owing to H. L. Hodges, or, in other words, they unlawfully and illegally connived and colluded together to change the title to said lands without the payment of one cent of money by the purchasers, and that each and every one who professed to hold a claim should be secured by a mortgage on the lands, to be executed by the purchasers, regardless of what the lands brought at the sale, and regardless of whether the purchasers were indebted to those to whom they were to give security or not. In pursuance of said unlawful, illegal, and fraudulent connivance and collusion on the part of said defendants, the said trustee did in fact readvertise said lands . . . and thereafter the said J. H. Waldrop did unlawfully, illegally, and fraudulently . . . transfer and assign said bid to Joe and Guy Sutton," etc. After suit was instituted by Bundy, J. W. Sutton was duly and legally declared to be sane, and upon his petition it was ordered that he be made a party plaintiff to the suit.

The defendants filed answers denying any conspiracy or unlawful agreement to deprive J. W. Sutton of his lands, and at the trial much evidence was offered by both sides.

When the plaintiff rested all the defendants moved for judgment of nonsuit. This motion was allowed as to the defendants F. M. Wooten and F. C. Harding, and denied as to all other defendants.

The following issues were submitted to the jury:

"1. Did the defendants Sarah E. Sutton, Joe Sutton, Guy Sutton, Greenville Banking and Trust Company, W. H. Woolard, trustee, H. L. Hodges, J. H. Waldrop, Nora Patrick, and Virginia-Carolina Chemical Corporation illegally and fraudulently collude and conspire together to suppress the bidding at the sale of the J. W. Sutton lands under the Tucker, receiver, deed of trust to W. H. Woolard, trustee, as alleged in the complaint?

"2. Did the defendants Joe Sutton and Guy Sutton illegally and fraudulently collude and conspire together to acquire title to the lands of J. W. Sutton at an unfair, inequitable, and grossly inadequate price, as alleged in the complaint?

"3. Did the defendants Sarah E. Sutton, Joe Sutton, Guy Sutton, Greenville Banking and Trust Company, W. H. Woolard, trustee, H. L. Hodges, J. H. Waldrop, Nora Patrick, and Virginia-Carolina Chemical Corporation, by means of said illegal and fraudulent conspiracy and collusion, enable Joe Sutton and Guy Sutton to acquire title to the lands of J. W. Sutton at an unfair, inequitable, and grossly inadequate price, as alleged?

"4. Did the defendants Joe Sutton and Guy Sutton, by means of said illegal and fraudulent collusion and conspiracy, acquire title to the lands of J. W. Sutton at an unfair, inequitable, and grossly inadequate price, as alleged?

"5. Did the defendants Joe Sutton and Guy Sutton illegally and fraudulently collude and conspire together to acquire title to the personal property of J. W. Sutton, sold by W. H. Woolard, trustee, at an unfair, inequitable, and grossly inadequate price, as alleged?

"6. Do the defendants Joe Sutton and Guy Sutton hold title to the lands conveyed·to them by W. H. Woolard by deed dated 28 March, 1932, as trustees *ex maleficio* for the use and benefit of J. W. Sutton, as alleged?

"7. Do the defendants Joe Sutton and Guy Sutton hold title to the personal property sold by W. H. Woolard, to wit, nine mules, three wagons and three sets of harness, as trustees *ex maleficio* for the use and benefit of J. W. Sutton, as alleged?"

The jury answered the first, second, third, fourth, and fifth issues "Yes." The trial judge instructed the jury that he would answer the sixth and seventh issues after the jury had determined the proper answers to the first five issues.

After the verdict was returned the record shows the following: "The defendants W. H. Woolard, J. H. Waldrop, H. L. Hodges, and Greenville Banking and Trust Company having moved the court to set aside the verdict of the jury as to them in answer to the first and third issues on the grounds that said answers were contrary to the weight of the evidence, and the court being of the opinion that said motion should be allowed, in its discretion set aside the verdict of the jury in answers to the first and third issues as to W. H. Woolard, J. H. Waldrop, H. L. Hodges, and Greenville Banking and Trust Company."

Judgment was entered as shown in the record and the defendants Sarah E. Sutton, Joe Sutton, Guy Sutton, Nora Patrick, and Virginia-Carolina Chemical Corporation appealed.

*Gaylord & Harrell for plaintiff.*
*Albion Dunn for Joe Sutton and Guy Sutton.*
*Blount & James for Virginia-Carolina Chemical Company.*
*F. M. Wooten for Nora Patrick.*

BROGDEN, J.   Has the trial judge the power to make material amendments to a verdict, as rendered by the jury and accepted, and thereupon enter judgment upon such verdict so amended?

A verdict is a substantial right.   A trial judge in the due and orderly administration of justice has the power to set a verdict aside in his discretion or as a matter of law, and it is his duty to do so when a palpable miscarriage of justice would result.   The ultimate objective of the law is to guarantee justice to all the parties.   A trial is the process ordained and sanctioned for realizing that objective.   A jury in proper cases may correct its verdict with the approval of the court in the event the verdict does not correctly express the actual agreement of the jury.   *McCabe Lumber Co. v. Beaufort County Lumber Co.,* 187 N. C., 417, 121 S. E., 755; McIntosh North Carolina Practice and Procedure, p. 665, sec. 603.   See, also, *Cole v. Laws,* 104 N. C., 651, 10 S. E., 172; *Willoughby v. Threadgill,* 72 N. C., 438.

In the case at bar, in answer to the first and third issues, the jury found that nine of the defendants had conspired to suppress bidding at the sale, and that by reason of such illegal conspiracy had enabled Joe Sutton and Guy Sutton to acquire title to the lands of their father at a grossly inadequate price.   The trial judge amended the verdict upon these issues by eliminating four of the alleged conspirators, or as stated in the record, "set aside the verdict of the jury as to them."   "While a change merely as to form is not fatal, the court cannot amend or change a verdict in any matter of substance without the consent of the jury, and cannot do so with their consent after the verdict has been finally accepted and recorded."   *S. v. Snipes,* 185 N. C., 743, 117 S. E., 500. It was also held in *Rankin v. Oates,* 183 N. C., 517, 112 S. E., 32, that the "court was without authority to reverse the jury's finding on the second issue, answer it himself, and then render judgment on the verdict as amended."   Also, in *Sitterson v. Sitterson,* 191 N. C., 319, 131 S. E., 641, it was held that "the court had the power to set aside the verdict, but none to reverse the answers of the jury."   See, also, *Bartholomew v. Parrish,* 186 N. C., 81, 118 S. E., 899; C. S., 591.   Of course, if the plaintiff is not entitled to recover upon any aspect of the case, the trial judge has the power to dismiss the action despite the verdict of the jury. *Sitterson v. Sitterson, supra.*   Moreover, in cases in which a plaintiff is entitled to recover as a matter of law, irrespective of the answer of the jury to certain issues, a judgment will not be upset even though the trial judge struck out an answer of the jury to a certain issue and substituted an answer of his own.   This principle was applied in *Sprinkle v. Wellborn,* 140 N. C., 163, 52 S. E., 666.   *Justice Walker,* the author of the opinion, remarked: "It was error in doing so, but not reversible error.   The court had the power to set aside the verdict, as

to that issue, that is *pro tanto,* but none to reverse the answer of the jury. This was an invasion of their province, but the defendant cannot complain of it, as it worked no material injury in law to him."

Consequently, it might be asserted by the plaintiff in the present action that as Joe and Guy Sutton now hold the title to their father's land, and such deed has been set aside, that they have no right to complain because other conspirators were erroneously eliminated from the verdict. A verdict must be construed in the light of the pleadings and charge of the court. When the verdict in the case at bar is so construed it is not clear that the jury would have found Joe Sutton and Guy Sutton guilty of conspiracy when the title to the property was outstanding in Woolard, trustee for the bank, and such trustee duly sold the property as required by law in the open market and with no agreement or understanding, express or implied, that the Suttons should become the purchasers.

Therefore, viewing the case in the light of the pleadings, evidence, and charge of the trial judge, it is the opinion of this Court that the amendment of the verdict was erroneously entered, and for such error a new trial is awarded. In awarding a new trial this Court does not decide any other exception appearing in the record to the end that the case may be retried wholly upon its merits, free from intimation upon all assignments of error contained in the record.

New trial.