IN THE MATTER OF: THE LAST WILL AND TESTAMENT OF
S. E. HARRINGTON, DECEASED.

(Filed 2 March, 1960.)

1. **Wills § 24— Fact that testator devised lands held by entireties held not evidence of mental incapacity under facts of this case.**

Testator devised to two named sons one of testator's farms and devised and bequeathed to his wife one-third of his personalty and a life estate in his other lands, with remainder to other children and to grandchildren. A farm thus devised the wife for life was owned by testator and his wife by the entireties. *Held*: The fact that testator devised lands held by the entireties is no indicia of mental incapacity, since if he had survived his wife or if she, having survived him, elected to take under the will, his devise of the lands held by the entireties would be effective, and if she dissented from the will she might, in making final disposition of her property, take into account the property advanced to their children under the effective provisions of his will, and testimony of mental incapacity based solely on the fact that he thus devised lands not belonging to him is insufficient to present any controversy as to his mental capacity.

2. **Wills § 23b—**

The widow's election to dissent from the will is without probative value on the issue of the mental capacity of the husband to make a will, and the exclusion of evidence of such dissent is proper.

3. **Wills § 21b—**

The mental capacity of a testator to execute a will must be determined in accordance with the circumstances facing him at the time of the execution of the instrument, unaffected by the happening of subsequent contingencies.

4. **Appeal and Error § 40: Wills § 24—**

While it is technical error for the court to direct a verdict on the issue of the due execution of the paper writing propounded, where the evidence is to the effect that all the requirements of the law were strictly complied with in the formal execution and publication of the will, and the parties so stipulate, an instruction that the jury should answer the issue of due execution in the affirmative cannot be prejudicial.

5. **Wills § 24: Trial § 28—**

Where in caveat proceedings the testimony is to the effect that testator possessed mental capacity to execute the instrument and there is no evidence to the contrary sufficient to raise a controversy upon this issue, the court may correctly charge the jury that if the jury finds from the evidence, and by its greater weight, the facts to be as all the evidence tends to show, the jury should answer the issue in the affirmative, and that if it does not so find, to answer the issue in the negative, since such instruction leaves it to the jury to pass upon the credibility of the evidence.

APPEAL by caveators from *Bundy, J.*, October, 1959 Term, PITT Superior Court.

S. E. Harrington died July 25, 1959. Two days thereafter Lloyd Harrington offered for probate as the last will and testament of S. E. Harrington three written instruments. The first, dated March 28, 1956, purported to be the will; and two, dated the following day, purported to be codicils thereto. Upon the oath and examination of the two subscribing witnesses to the documents, the Clerk Superior Court of Pitt County admitted them to probate in common form and issued letters testamentary to Lloyd Harrington, one of the executors.

The testator gave to his sons, Lloyd Harrington and Mack Harrington, in fee, his Kirkman Farm in Craven County and the personal property located thereon. He gave to his wife, Mamie E. Harrington, "if she survive me," one-third of all his personal property, excluding that located on the Kirkman Farm. He also devised to her a life estate in substantially all his lands except the Craven County farm. All other personalty was to be equally divided among his children and those that represented them. He devised tracts and lots of land in Pitt County to his children and grandchildren, subject to his wife's life estate if she survived.

On August 13, 1959, Elsie Harrington Collins, a daughter of S. E. Harrington, filed a caveat to the will, alleging the documents admitted to probate in common form were not the will of her father for that (a) the execution of the will was obtained by undue and improper influence and duress on the part of Lloyd Harrington and Mack Harrington; and (b) S. E. Harrington, at the time he signed the will and continuously thereafter, did not have sufficient mental capacity to make a will.

Upon the service of a citation, some of the devisees and heirs at law aligned themselves on the side of the propounder and joined in the answer to the caveat. Others joined the caveators. The clerk transferred the proceeding to the superior court for jury trial. The caveators amended their caveat by striking the allegation of undue influence, leaving lack of mental capacity on the part of the testator as their only objection to the validity of the will.

At the trial the propounders proved the formal execution of the will and offered it in evidence. The caveators examined Geraldine Harrington Sharpe, one of the testator's daughters, relative to his mental capacity. She testified: "I had occasion to see and converse with my father before he died quite often. I was in his home five or six hours a day in which I cleaned house and cooked for my mother while they were sick. . . . Before he died my father was in fairly good health. He

was 81 years old at the time of his death. I have lived next door to my father since 1954. My father continued to tend to his business affairs up to the time of his death. He did very well. . . . I have an opinion satisfactory to myself as to whether my father, S. E. Harrington, at the time of the execution of his last will and testament, on March 28, 1956, and at the time of the execution of the two codicils thereto on March 29, 1956, had sufficient mental capacity to understand the business about which he was engaged when he executed the will, to understand the nature and extent of the property which he owned, to know the persons who are the natural objects of his bounty, and to know the force and effect of his act in making a will disposing of his property. In my opinion he was a very good business man. He was very forgetful in his later years and he did not have the mental capacity to make a will because he didn't know the nature and extent of his property because he willed property to the children that he did not own. It belonged to my mother. He had the mental capacity to know who his children and grandchildren were. He had the mental capacity to know what he was doing when he executed the will. He lacked mental capacity only in that he did not know the extent of his property or he wouldn't have willed property that did not belong to him."

On cross-examination, Mrs. Sharpe testified: "My father tended to his farm very well. He carried on his business. He told the tenants where to plant the crops. He gave all instructions in respect to the growing and marketing. He went to the tobacco market with his tobacco and he received the checks and deposited the checks in the bank. I don't know his business well enough to know whether he left undone anything with respect to the management of his property through the years. *The only thing that I know is he just willed me property that he didn't own.* . . . I say in my opinion he had sufficient mental capacity to manage his property and to know the nature of his property. I said a moment ago to Mr. Owens that my father had mental capacity sufficient to execute a will. I said that he did not know the extent of his property. I testified that I didn't doubt that my father had the mental capacity to know what he was about when he went to make his will."

The caveators offered a stipulation with respect to the deed to the Pitt County lands. Its purport and effect will be discussed in the opinion.

The caveators identified and attempted to offer in evidence the widow's dissent from the will. Assignment of error No. 1 is based on

the court's refusal to admit the dissent in evidence. The court submitted to the jury the following issues:

"1. Were the paper writings propounded, dated March 28, 1956, March 29, 1956, and March 29, 1956, executed by S. E. Harrington, according to the formalities of the law required to make a valid Last Will and Testament?

"2. Did S. E. Harrington, on the 28th day of March, 1956, have the testamentary capacity to execute a Last Will and Testament?

"3. Did S. E. Harrington, on the 29th day of March, 1956, have the necessary testamentary capacity to execute the codicils to the last will and testament?

"4. Is the paper writing propounded for probate and the codicils attached thereto and every part thereof the last will and testament of S. E. Harrington?"

The jury answered all issues in the affirmative. The court entered judgment declaring the will and codicils probated in solemn form as the last will and testament of S. E. Harrington, Deceased. Caveators appealed, assigning errors.

*Owens & Langley, Robert D. Wheeler,* for caveators, appellants.
*M. E. Cavendish, L. W. Gaylord, Jr., Albion Dunn* for propounders, appellees.

HIGGINS, J.   Prior to 1944 the testator was the owner in fee of the Kirkman Farm in Craven County. He also owned substantial real estate in Pitt County, where he lived. On November 28, 1944, he executed a deed conveying the Pitt County lands (with the exception of a few small lots) to Edwin Harrington, Trustee, who on the same day executed a deed for the said lands to the testator and his wife, Mamie E. Harrington. It is stipulated the deed to the testator and his wife created an estate by entireties. It is further stipulated: "S. E. Harrington continued in active possession and control of the same and collected all rents and profits up until his death on July 27, 1959."

The testator, in dividing his real estate among his wife, his children and grandchildren, (the latter representing their deceased parent) treated the Pitt County lands as his own. The trouble arose when it was ascertained the Craven County land passed by the will to the two sons but that the Pitt County lands, upon the death of the testator, passed to his wife as survivor.

The will is challenged only on the ground the testator lacked mental capacity to make it. It is significant the only evidence offered as tending to show lack of mental capacity is the daughter's conclusion from

the fact the testator attempted to devise lands in Pitt County which he and his wife held by the entireties at the time he executed his will in 1956. Is the evidence offered sufficient to present any controversy as to his mental capacity? Reduced to its final analysis, the evidence of mental incapacity rests solely on the conclusion he devised the lands which belonged not to him, but to his wife. The evidence from which the conclusion is drawn looks backward from the testator's death to the time he made his will. In order to ascertain his capacity, we must look at the situation on the date he executed the will. Assuming he understood the full purport of the doctrine of survivorship, nevertheless it was not unreasonable to suppose his purpose to divide his lands equitably would eventually be carried out.

The testator, prior to 1944, was the fee simple owner of the lands both in Craven and Pitt Counties. The effect of the transactions creating the estate by the entireties in the testator and his wife was to provide for the survivor to take all. At the time the will was executed the testator, of course, did not know whether he or his wife would survive. If he survived, the estate would go according to the terms of his will. The will made provision for the wife to take personal property and a life estate in the Pitt County lands. If she survived, and elected to take under the will, the devise to the children would be effective to pass title to them. The wife had the right to dissent from the will and take as survivor, or she had an equal right to abide by the will and take under it. Even though the widow should dissent and take the Pitt County lands as survivor, nevertheless in the final disposition of her estate she had the undoubted right to dispose of the lands, taking into account the advancements already made by her husband. In this view we hold the attempt to devise the Pitt County lands and the conclusion of his daughter with respect to his mental capacity are insufficient to sustain a finding the testator lacked mental capacity to execute a will. Under the circumstances here disclosed, the widow's dissent, filed after the testator's death, in 1959, was not evidence of his lack of mental capacity to make a will in 1956. The widow's election to dissent is without probative value on the issue of mental capacity. The exclusion was proper. *In re Estate of Povey,* 271 Mich. 627, 262 N.W. 98. Assignment of Error No. 1 is not sustained.

The caveators assign as error the court's charge on the first issue: "The caveators agree that it (the will) was executed according to the formalities of the law and that you shall answer that issue in the affirmative, or yes." Technically the charge is not in the approved form, although the evidence was unconditionally to the effect that all re-

quirements of the law were strictly complied with in the formal execution and publication of the will. Nevertheless, the probate proceeding being *in rem*, with the burden on the propounders to show the formal execution of the will, the credibility of the evidence was at issue. *In re Will of Harris*, 218 N.C. 459, 11 S.E. 2d 310; *In re Will of Evans*, 223 N.C. 206, 25 S.E. 2d 556. Under the circumstances, the court should have charged in substance if the jury finds the facts with respect to the execution of the will to be as all the evidence tends to show, and so finds by the greater weight of the evidence, then the answer to the first issue should be, "Yes"; otherwise, "No." The failure to charge substantially as indicated is technical, though not reversible error. The error was invited by the stipulation. The caveators, in presenting the assignment of error, frankly state in their brief: "The caveators will concede that their ultimate success . . . will depend more on other assignments . . . as there was no evidence that the will was not duly executed and even if proper instructions had been given, the jury would probably have answered the issue 'yes,' and probably will do so on any new trial." Under the facts here disclosed, the technical error is not prejudicial. It was not the denial of any substantial right. *In re Thompson's Will*, 248 N.C. 588, 104 S.E. 2d 280; *In re Efird's Will*, 195 N.C. 76, 141 S.E. 460.

The caveators assign as error the refusal of the court to give the special instructions requested. These instructions are based on the premise that the evidence was sufficient to go to the jury and to support an affirmative finding that the testator did not have sufficient mental capacity to enable him to make a valid will. In no view of the evidence is it sufficient to support a finding of mental incapacity. The court, therefore, was required to charge the jury if it found from the evidence, and by its greater weight, the facts to be as all the evidence tended to show, then issues 2, 3, and 4 should be answered, "Yes." If the jury failed so to find, the answer should be, "No." The instructions left with the jury the function of passing on the credibility of the evidence. The charge given was in substance as above indicated. *Coffey v. Greer*, 249 N.C. 256, 106 S.E. 2d 209; *Rhodes v. Raxter*, 242 N.C. 206, 87 S.E. 2d 265; *Commercial Solvents, Inc. v. Johnson*, 235 N.C. 237, 69 S.E. 2d 716; *In re Will of Evans*, 223 N.C. 206, 25 S.E. 2d 556.

While a nonsuit cannot be entered and a verdict cannot be directed in a caveat proceeding, *In re Will of Ellis*, 235 N.C. 27, 69 S.E. 2d 25, nevertheless, when the evidence offered is all one way without conflict, and subject to only one interpretation, an instruction similar to that given by the court on the second, third and fourth issues is not

erroneous. This Court, in the case of *In re Will of Duke*, 241 N.C. 344, 85 S.E. 2d 332, said: " 'The court instructs you the burden of that issue is upon the propounders to satisfy the jury upon the evidence and by its greater weight that the said paper writing propounded as the last will and testament of Hilda S. Duke was executed in accordance with the formalities required by law; and the propounders have offered such evidence and the court is not aware of any evidence to the contrary, and therefore instructs the jury that if you believe the evidence and all of the evidence and find the facts to be as all of the evidence tends to show, and by its greater weight, it would be your duty to answer that first issue, "Yes," ' . . . it was proper for the court to give the instruction quoted above. The verdict is made to rest upon the finding of the jury upon the evidence offered."

The other errors assigned have been carefully examined. They fail to show merit.

No error.