HAWKINS L. CHISHOLM, WAITES C. CHISHOLM, WALLACE P. CHIS-
HOLM, EUGENE S. CHISHOLM, JOHN V. EDWARDS, RUDOLPH ED-
WARDS, ALMOND EDWARDS, HELENE M. CABRAL AND MADELINE
K. CUNNINGHAM v. ANN HALL AND KATHERINE HALL.

(Filed 27 September, 1961.)

**1. Trial § 31—**

A directed verdict may not be given in favor of the party upon whom
rests the burden of proof, or in favor of either party when the evidence
in regard to the material facts is conflicting.

**2. Same—**

Where a material fact alleged in the complaint is denied in the answer,
the pleadings raise an issue of fact for the determination of a jury, Con-
stitution of North Carolina, Art. IV, sec. 1, and the court may not properly
give a directed verdict on the issue in favor of plaintiffs even though
defendants introduce no evidence, since, even so, the credibility of the
evidence remains in the province of the jury.

**3. Same—**

When all of the evidence offered upon an issue suffices, if true, to es-
tablish the controverted fact, the court may charge the jury to answer the
issue accordingly if they find the facts to be as all of the evidence tends
to show, since such peremptory instruction does not deprive the jury of
the right to reject the evidence because of lack of faith in its credibility.

**4. Same;   Appeal and Error §§ 1, 42—**

When the first issue, upon which plaintiffs have the burden of proof,
is merely formal and the rights of the parties, under the stipulations
and admissions, depend solely upon the answers to the second and third
issues relating to affirmative defenses, and there is insufficient evidence
to be submitted to the jury upon the defenses, a directed verdict in favor
of plaintiffs on all three issues cannot be prejudicial, since upon the
theory of trial plaintiffs are entitled to recover as a matter of law.

**5. Trial § 6—**

Stipulations duly made during the course of the trial constitute judicial
admissions, binding on the parties and dispensing with the necessity of
proof.

**6. Ejectment § 10;   Quieting Title § 2— Upon theory of trial, defendents
admitted plaintiffs' record title and relied solely upon affirmative de-
fenses.**

In this action to remove cloud from title, plaintiffs claimed as heirs
at law of their ancestor, and the parties stipulated that plaintiffs and de-
fendants claim under a common source of title and defendants admitted
the death of the common source, and relied solely upon adverse possession
for 20 years and for 7 years under color of title. *Held:* The admissions
raise a presumption that the common source of title died intestate and
the rights of the parties depend, under the theory of trial, solely upon
the issues relating to the affirmative defenses, upon which defendants

CHISHOLM *v.* HALL.

have the burden of proof, and upon the failure of defendants to offer evidence sufficient to be submitted to the jury upon the affirmative defenses, a directed verdict in favor of plaintiffs upon the issue of whether plaintiffs were the owners and entitled to possession of the lands in controversy is not prejudicial.

**7. Same—**

Where, in an action to quiet title, defendants rely upon a tax foreclosure deed but fail to put in evidence any judgment or record showing sale of the property for non-payment of taxes, there is a hiatus in the chain of title, and such evidence is insufficient to establish record title in defendants.

**8. Adverse Possession § 23—**

Where defendants' evidence upon their claim of title by adverse possession is limited to evidence that their predecessors in title had planted grass seed on the land during one year and had planted and harvested oats in another year, and had listed and paid taxes on the lands for over 20 years, the evidence is insufficient to be submitted to the jury upon the question of adverse possession for 20 years or for 7 years under color, since while the payment of taxes is evidence of the character of their claim, it is not evidence of actual possession, and the evidence of the other two incidents is insufficient, as a matter of law, to show continuous possession by defendants for the statutory periods. G.S. 1-38.

**9. Trial § 18—**

It is the function of the court to declare the law and where, under the admissions of the parties, the evidence is insufficient as a matter of law to raise an issue of fact, it is the duty of the jury to return a verdict in accordance with the court's declaration of the law.

**10. Trial § 45—**

When the jury renders a verdict upon disputed issues of fact the court may not reject the verdict because it is contrary to the evidence, its power being solely to set aside the verdict to prevent an unjust result, but when the court properly directs a verdict upon the issues and the jury returns a verdict inconsistent with the charge and contrary to law, the court may refuse to accept the verdict and direct the jury to return a verdict which conforms to the law as declared by the court.

APPEAL by defendants from *Campbell, J.,* April 1961 Civil Term of BUNCOMBE.

This is an action to remove cloud from title. Plaintiffs alleged they are the descendants and heirs at law of John Chisholm and, as such, the owners of a parcel of land conveyed to him in 1875. Defendants denied plaintiffs owned the land in controversy. They sought affirmative relief based on their allegations that they had acquired title to the property in controversy by virtue of their possession within known and visible boundaries for the statutory period and by possession under color of title for the statutory period.

During the trial the parties stipulated that the deeds offered in evidence described and included the land in controversy. They further stipulated: ". . . the plaintiffs and the defendants have a common source of title and it will not be necessary to go further back than the papers introduced as we proceed with the trial."

The court submitted three issues to the jury: (1) Were the plaintiffs the owners and entitled to possession of the land in controversy? (2) Had defendants been in possession for seven years under color? (3) Had defendants been in possession for twenty years? The court directed the jury to answer the first issue yes and the last two issues no.

The jury, contrary to the instruction, answered the first issue no and the last two issues yes. The court declined to accept this verdict. The jury was directed to return to its room and answer the issues as originally instructed. It did so. Judgment reciting the verdict as last returned was entered declaring plaintiffs the owners of the land in controversy. Defendants excepted and appealed.

*Richard B. Ford and Loren D. Packer for plaintiff appellees.*
*Guy Weaver for defendant appellants.*

RODMAN, J. Defendants' assignments of error present these questions for decision: (1) Did the court err in directing the jury to answer the first issue in the affirmative? (2) Could the court refuse to accept a verdict which was contrary to the court's instruction and require the jury to answer the issue in accord with its direction?

It is true, as contended by defendants, that a denial of plaintiffs' claim of ownership, thereby raising an issue of fact, places the burden of proof on plaintiffs to establish their allegation by evidence which a jury is entitled to weigh. Facts at issue are "tried by order of court before a jury." N. C. Const. Art. IV, sec. 1.

When all the evidence offered suffices, if true, to establish the controverted fact, the court may give a peremptory instruction—that is, if the jury find the facts to be as all the evidence tends to show, it will answer the inquiry in an indicated manner. Defendant's denial of an alleged fact raises an issue as to its existence even though he offers no evidence tending to contradict that offered by plaintiff. A peremptory instruction does not deprive the jury of its right to reject the evidence because of lack of faith in its credibility. *In re Will of Harrington,* 252 N.C. 105, 113 S.E. 2d 21; *Roach v. Ins. Co.,* 248 N.C. 699, 104 S.E. 2d 823; *Hincher v. Hospital Care Ass'n.,* 248 N.C. 397, 103 S.E. 2d 457; *Peek v. Trust Co.,* 242 N.C. 1, 86 S.E. 2d 745; *Morris v. Tate,* 230 N.C. 29, 51 S.E. 2d 892; *Commercial Solvents v. Johnson,*

235 N.C. 237, 69 S.E. 2d 716; *In re Will of Evans*, 223 N.C. 206, 25 S.E. 2d 556. Such an instruction differs from a directed verdict as that term is used by us. A verdict may never be directed when the facts are in dispute. The judge may direct a verdict only when the issue submitted presents a question of law based on admitted facts. *Cauley v. Dunn*, 167 N.C. 32, 83 S.E. 16; *Everett v. Williams*, 152 N.C. 117, 67 S.E. 265; *Russell v. R.R.*, 118 N.C. 1098; McIntosh, N.C.P.&P., 2d ed., sec. 1516.

To determine if there was error in directing a verdict in plaintiffs' favor we must look to the issues and interpret them in the light of the pleadings and the stipulations made during the trial. *Rowland v. Rowland*, 253 N.C. 328, 116 S.E. 2d 795; *Hill v. Casualty Co.*, 252 N.C. 649, 114 S.E. 2d 648; *Lyda v. Marion*, 239 N.C. 265, 79 S.E. 2d 726.

Manifestly the parties understood that all three issues could not be answered in the affirmative. Plaintiffs could not be the owners and entitled to possession if either the second or third issue relating to defendants' adverse possession was answered in the affirmative. Such a finding on either issue would vest title in defendants. *Martin v. Bundy*, 212 N.C. 437, 193 S.E. 831; *Morse v. Freeman*, 157 N.C. 385, 72 S.E. 1056; *Mobley v. Griffin*, 104 N.C. 112. Title so acquired would defeat plaintiffs' right to possession and title acquired from their ancestors, their only asserted source of title.

The case on appeal, prepared by appellants, states plaintiffs, to support their claim of ownership, offered in evidence a deed dated in 1875 to John Chisholm covering the land in dispute. His death was admitted in the pleadings. The case on appeal further states: "The defendants claimed title under a deed from H. B. Higgins and wife dated August 25, 1951. Higgins having acquired title through several conveyances resulting from a tax foreclosure for non-payment of taxes from 1929 to 1933, inclusive, and alleged adverse possession of the property through their deed and predecessors in title for twenty years and pleaded the twenty-year statute of limitations, and the seven-year statute of Limitations."

The foregoing statement, when read in the light of the stipulation entered at the trial that the parties claimed under a common source and "it will not be necessary to go further back than the papers introduced as we proceed with the trial," necessarily implies and is a judicial admission of these facts: (1) John Chisholm acquired good title to the land in controversy by the deed to him dated in 1875. (2) John Chisholm was dead. (3) Plaintiffs were his descendants and heirs at law.

When facts are judicially admitted, they are no longer the subject of inquiry. As said by *Walker, J.*, in *Lumber Co. v. Lumber Co.*, 137

N.C. 431: "Parties undoubtedly have the right to make agreements and admissions in the course of judicial proceedings, especially when they are solemnly made and entered into and are committed to writing, and when, too, they bear directly on the matters involved in the suit. Such agreements and admissions are a frequent occurrence and are of great value, *as they dispense with proof* and save time in the trial of causes. The courts recognize and enforce *them as substitutes for legal proof,* and there is no good reason why they should not." (Emphasis supplied.)

Upon the facts admitted the law raised a presumption that John Chisholm died intestate. *Skipper v. Yow,* 249 N.C. 49, 105 S.E. 2d 205; *Barham v. Holland,* 178 N.C. 104, 100 S.E. 186; *Cox v. Lumber Co.,* 124 N.C. 78. By statute when one dies intestate, title to his real estate is transmitted to his heirs. c. 29 of the General Statutes.

Under the stipulation the submission of the first issue to the jury was a mere matter of form. Plaintiffs were, as between plaintiffs and defendants, as a matter of law, the owners unless defendants had acquired title by possession as alleged. They carried the burden of establishing facts to show that they had acquired title as they alleged. *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16.

Notwithstanding the statement in the case on appeal that defendants asserted title by virtue of a tax foreclosure proceeding and conveyances to them from the purchaser at such proceeding, they did not put in evidence any judgment or record showing a sale of the property for nonpayment of taxes. They did offer in evidence a deed dated 15 November 1937 to one Cashius Holloway reciting that the property conveyed was "the same property listed for County taxes in the name of Lucy Chisholm for the years 1929, 1930, 1931, 1932 and 1933, and being her interest in the John Chisholm old tract." They offered in evidence a deed from the widow of Cashius Holloway to H. B. Higgins dated 30 August 1951 and other conveyances sufficient to vest title in them to such properties as H. B. Higgins owned.

Manifestly the record title so offered is insufficient to establish defendants' ownership. In addition to the record evidence, they offered evidence to show that they had for many years paid taxes on the land. On one occasion one of their ancestors in title had purchased grass seed to sow on the land, and on another occasion had sown oats on the land, which he had harvested. The evidence with respect to actual occupancy was limited to the planting of the grass seed on one occasion and the planting and harvesting of the oats in another year. The evidence offered by defendants was insufficient to establish their assertion of adverse possession for the statutory period unless

the payment of taxes for such period constituted such continuous adverse possession as would vest title in them. The fact that defendants listed and paid the taxes is evidence of the character of their claim, *Faulcon v. Johnston,* 102 N.C. 264, but it is no evidence of actual possession. Such listing and payment would not suffice to support an action in ejectment or trespass. That is the test of possession referred to in G.S. 1-38 and 40. *Justice v. Mitchell,* 238 N.C. 364, 78 S.E. 2d 122.

Defendants had the burden of establishing their affirmative defense, *i.e.,* their allegation of ownership. *Wells v. Clayton, supra.* Accepting as true all the evidence offered by them, it was insufficient to meet the burden imposed by law since it failed to show continuous possession for the statutory period. Hence the court correctly directed the jury to answer the second and third issues in the negative. Here, as with respect to the first issue, the answer did not depend upon the determination of a factual controversy. The answer was the answer of the law, accepting as true all of the evidence offered by defendants.

Since there was no issue of fact, there was nothing for the jury to determine. The function of the jury is to ascertain the facts. They have no duty when the facts are admitted. It is the function and duty of the court to declare the law. It is the duty of the jury to follow the court's declaration of law. *Brown v. Vestal,* 231 N.C. 56, 55 S.E. 2d 797; *Spencer v. Brown,* 214 N.C. 114, 198 S.E. 630; *Bundy v. Sutton,* 207 N.C. 422, 177 S.E. 420; *Sears, Roebuck v. Banking Co.,* 191 N.C. 500, 132 S.E. 468.

When a jury returns a verdict inconsistent with the charge and contrary to law, making it manifest the jury has misunderstood the law as declared by the court, it may refuse to accept the verdict and direct the jury to return a verdict which conforms to the law as declared by the court. *Oates v. Herrin,* 197 N.C. 171, 148 S.E. 30; *Willoughby v. Threadgill,* 72 N.C. 438; *Cahill v. Chicago, M. & St. P. Ry. Co.,* 74 F. 285; *Cherniak v. Prudential Ins. Co. of America,* 14 A. 2d 334; *S. v. McElhinney,* 100 S.W. 2d 36.

The Court of Appeals of Missouri, in the *McElhinney* case, on facts substantially identical with the facts of this case, said: "But while the judge acts within his accepted province in directing a verdict, the jury in such an instance departs from its usual function, since in returning a verdict in response to such a direction the jury does not exercise any measure of discretion, but acts only formally, perfunctorily, and ministerially as the instrument by which the court prepares the orderly record which will support the only judgment that can lawfully be rendered in the case. Under such circumstances, though

the act of returning a directed verdict purports to be that of the jury, it is in legal effect the act of the court itself, and the function of the jury in returning a directed verdict is as much ministerial as is the act of the clerk of the court in subsequently entering up the judgment based thereon.

"It must follow, therefore, that with the judge passing upon a question of law in directing a verdict, and with the jury bound to follow the law as declared to them by the judge, a refractory jury, refusing to obey the judge's directions, is not to be permitted to defeat the exercise by the judge of a power and function which he and he alone possesses by assuming and arrogating to itself the power which it does not and could not possess of reviewing and overruling the decision of the judge on the law of the case. To so permit would be to invest the jury with an authority and function which is solely innate and inherent in the judge, and to make the jury and not the law supreme."

Of course the court may not, when the jury is performing its duty of applying the law to disputed facts and the answers given are based on the jury's determination of the facts, refuse to accept the verdict and require it to render another verdict. The court may, in that situation, set aside the verdict because contrary to the weight of the evidence and for that reason would produce an unjust result, but it cannot refuse to receive the verdict and require a verdict contrary to the jury's findings.

No error.