JOHN E. TREADWELL, CHAIRMAN, AND GEORGE H. JORDAN, JR., MEMBERS OF, COMPRISING THE WAKE COUNTY BOARD OF ALCOHOLIC CONTROL v. E. GARLAND GOODWIN

No. 7210DC315

(Filed 28 June 1972)

1. **Rules of Civil Procedure § 50— directed verdict**
    The trial judge may direct a verdict only when the issue submitted presents a question of law based upon admitted facts.

2. **Landlord and Tenant § 13— option to renew lease — written notice — waiver**
    In an action for summary ejectment, the evidence was sufficient to raise the question of whether the conduct of the lessor, the lessee, and the purchaser of the property in question constituted a waiver of a requirement of the lease that the lessee notify the lessor by registered mail at the appropriate time of his intention to renew or extend the original lease for an additional five years, where there was evidence that the lessee has continued to hold over and pay rent since the expiration of his original one-year term, and that prior to the expiration of the original term the lessee told the lessor of his intention to remain in possession and received the lessor's permission to make improvements on the property.

APPEAL by defendant from *Preston, District Judge,* 22 November 1971 Session of District Court held in WAKE County.

Plaintiffs (sometimes referred to hereinafter as "ABC Board") instituted this civil action for summary ejectment before a magistrate on 12 February 1972, and from the judgment of the magistrate for plaintiffs, defendant appealed to the district court for trial de novo. The matter was set for trial but was dismissed on plaintiffs' motion for voluntary dismissal pursuant to Rule 41 (a) (1) of the Rules of Civil Procedure. The present action for summary ejectment was brought 10 September 1971. At the close of all the evidence and the argu-

ments to the jury, plaintiffs moved for a directed verdict under Rule 50(a) of the Rules of Civil Procedure, and the motion was allowed. Defendant appealed to the Court of Appeals.

*Maupin, Taylor & Ellis by Charles B. Neely, Jr., for plaintiff appellees.*

*Hatch, Little, Bunn, Jones & Few by William P. Few for defendant appellant.*

MALLARD, Chief Judge.

The only question for decision on this appeal is whether the trial court erred in granting a directed verdict in favor of the plaintiff ABC Board, a question which requires some examination of the facts as were established by the pleadings, admissions and stipulations of the parties or indicated by the testimony and exhibits introduced at trial.

The evidence for the plaintiffs tended to show the following: On 29 September 1967, one E. L. Riggs and wife (Riggs) were the owners of the property located at 2732 South Wilmington Street in Raleigh, North Carolina, which property is the subject of the controversy in this case. On that date, Riggs, as lessor, entered into a lease agreement with the defendant Goodwin. This lease was for an initial term of one year renewable at the option of the lessee for two successive five-year periods. The portions of the leasing agreement pertinent to this appeal provide as follows:

"That in consideration of the rent and mutual agreements hereinafter set forth, the Lessors have this day rented to the Lessee for the term of one year beginning the 1st day of September, 1967 and ending at midnight, 31st day of August, 1968, together with the options to renew this lease, as hereinafter set forth, the ground and building known as 2732 South Wilmington Street, City of Raleigh, Wake County, North Carolina.

This lease and agreement is upon the following terms and conditions:

*          *          *

2. The Lessee shall have the right and option to renew this lease for an additional period of five years beginning the 1st day of September, 1968 at the same monthly rental

price as the original one year term; and if the Lessee elects to lease and does lease these premises for the above referred to five year term; it shall then have the further right and option to extend and renew this lease for an additional term of five (5) years at the expiration of the above mentioned five year term. If the Lessee shall elect to renew this lease for either or both additional terms as hereinabove set out and provided for, he may do so by notifying the Lessors of his intention to do so AT LEAST THIRTY (30) DAYS prior to the beginning of such additional period of terms by notifying said Lessors by registered mail.

*      *      *

10. It is agreed that in the event that the Lessee shall do any repairs or remodeling on said building, then the same shall be done at the expense of the said Lessee but shall be done with the approval of the said Lessors; that in the event that in said remodeling or repairing the said Lessee shall damage the roof, exterior walls, or any other portion of the said building, then the same shall be replaced at the expense of the Lessee."

At the time this lease was made, Riggs was not represented by an attorney, but the defendant had desired to have a written agreement and therefore had caused a local attorney of his own choosing to prepare the leasing agreement signed on 24 September 1967. In November of 1968, Riggs decided that he wanted to sell the property and informed the defendant that he "had taken an option" to do so. Riggs further testified:

"During the time that Mr. Goodwin has occupied the property, neither he, his lawyer or anybody in his behalf has sent me notice by registered mail or any other mail that he wanted to renew his lease. He has never told me orally that he wanted to renew the lease. He has just stayed on the property."

Riggs, with the aid of an attorney, did proceed with his plans to sell the property, and in fact did sell it to the plaintiff ABC Board by warranty deed dated 15 December 1970. Riggs, however, accepted at least one monthly rental check "after the A.B.C. Board purchased the property." He testified, "Mr. Goodwin gave me the check and I took it." The defendant has been in possession of the property continuously since September 1967.

The General Manager for the ABC Board testified that at the time of the purchase of the property, he knew that the defendant was in possession of the premises, and that on 31 December 1970, pursuant to a resolution of the elected members of the ABC Board, he wrote a letter to defendant notifying him to vacate the premises within thirty days from the date of receipt. The defendant did not reply to this letter and did not vacate the premises; whereupon he was notified "that his rent was increased about $1,000 a month." The witness also testified on cross and redirect examination:

"I am not sure whether or not the January 1971 rent on the property went to Mr. Riggs or to A.B.C. Board. It may have. The A.B.C. Board has received the rent in the amount of $220 every month since that time. When I read the lease, I assumed that it was for a period of ten years, or for a shorter time. I did not have a copy of the lease prior to December 15, 1970. Nor did the A.B.C. Board. We were advised that there was a lease recorded on the property when I first started negotiating for the property. That must have been in November of 1970. The Board was advised of that fact also. The Board and I knew that there was a recorded lease on the premises prior to December 15, 1970, or as I said, sometime in November, 1970. Mr. Treadwell, a member of the A.B.C. Board, and I stopped by Mr. Goodwin's one day and talked maybe two or three minutes with Mr. Goodwin. That was after we wrote Mr. Goodwin asking him to vacate the property. That is the only time that I know of any member of the A.B.C. Board talking to Mr. Goodwin. I did not at that time tell Mr. Goodwin that we would give him $5,000 for his lease. There was not anything like that said in my presence.

\* \* \*

I asked our attorneys to write a letter on behalf of the board in February of this year in respect to Mr. Garland Goodwin occupying this property. I told the board's attorney to raise the rent on the Goodwin property to $750 per month. Mr. Goodwin never paid the increase in rent."

Defendant's evidence, to the extent that it supplemented or conflicted with that of the plaintiffs, tended to show that after taking possession of the premises at 2732 South Wilming-

Treadwell v. Goodwin

ton Street, the defendant had made a number of repairs and alterations in the process of preparing to operate and then operating a combination grocery and sporting goods store, and that in May of 1968 he had asked for and received permission from Riggs to build an ice house onto the existing building on the property at his own expense (approximately $700 for building materials and $1600 for an ice-making machine). The defendant Goodwin testified that at this time, approximately three months prior to the expiration of the original one-year lease:

> " . . . I made a statement to Mr. Riggs which was my attempt to renew my lease for an additional five years. I told him that I will definitely be here. I've got too much money invested now and with his permission, I would like to build an icehouse. Of course, he knew that was at my expense, and he said whatever I wanted to do would be alright. It would be an improvement to the building. These statements were made in the presence of Mr. Jose Raynor. *Mr. Riggs has never made any statement to me that my lease had not been renewed and he accepted the rent for the months of September and October, 1968 without qualification and he continued to accept the rent thereafter.*" (Emphasis added.)

Goodwin also testified, on cross-examination, that he had desired a "new lease" rather than an assignment of the lease of a former tenant, and that he had had his own lawyer prepare the lease that both he and Riggs subsequently signed and which is an exhibit in the present case. At no point did the defendant testify that he had attempted to renew the lease by notifying the lessor by registered mail as provided for in paragraph 2 of the lease, above quoted.

[1]  We hold that in light of all the evidence adduced at this trial, it was error for the trial judge to direct a verdict for the plaintiffs and to order, on 29 November 1971, that plaintiffs were entitled to "immediate possession" of the demised premises. "The judge may direct a verdict *only* when the issue submitted presents a question of law based upon admitted facts." (Emphasis added.) *Chisholm v. Hall,* 255 N.C. 374, 121 S.E. 2d 726 (1961). See also, *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297 (1971).

[2]  It is true that there is no evidence that the defendant Goodwin notified Riggs by registered mail at the appropriate

time of his intention to renew or extend the original lease; however, we think that the evidence is sufficient to raise the question of whether or not the conduct of Riggs and the defendant and the ABC Board constituted a waiver of this requirement. In 50 Am. Jur. 2d, Landlord and Tenant, § 1186, pp. 73, 74, it is said:

> "It is well settled that the the lessor may waive the requirement in a lease of notice by the lessee of renewal at or within a certain time, even though it is a condition precedent that timely notice be given. As a general rule, the lessor's acceptance, without objection, and his acting upon a notice not given within the required time, constitute a waiver. *A waiver will be implied where the lessee remains in possession and pays the rent to the lessor with the acquiescence of the latter.* (Citing *Coulter v. Capitol Finance Company,* 266 N.C. 214, 146 S.E. 2d 97.) Also, a provision that notice of the exercise of the privilege or option of renewing the lease should be given to the lessor in a certain mode, *as in writing or by mail or registered mail, or within a certain time before the termination of the lease, may be waived. Such waiver has been held to result where expense and labor had been incurred by the lessee, and plans had been laid out for the future,* which the lessor could hardly fail to know would not have been incurred and entered upon if the lessee had not been relying on a renewal of the lease. Whether there has been a waiver of written notice is a *question of fact* to be determined by the circumstances indicating the intention of the parties.

> In several cases it has been held that the circumstances did not show a waiver of the required notice. * * * A purchaser of rented property does not waive a provision in the lease for 30 days' notice of intention to renew by stating to the lessee after his purchase that he knew all about the terms of the lease." (Emphasis added.)

See also, *Kearney v. Hare,* 265 N.C. 570, 144 S.E. 2d 636 (1965); *Duke v. Davenport,* 240 N.C. 652, 83 S.E. 2d 668 (1954) and 5 Strong, N. C. Index 2d, Landlord and Tenant, § 14, to the effect that where a tenant in possession under a lease for a year or longer holds over and continues to pay the specified rental, which the landlord continues to accept unconditionally,

there is a rebuttable presumption that the tenancy is one from year to year. An extension or renewal of the original lease may or may not be effected by the conduct of the parties.

In the case before us Goodwin continued since the expiration of his original one-year term on 31 August 1968 to hold over and to pay rent. There is some evidence that he told Riggs of his intention to remain in possession and that Riggs allowed him to make certain improvements to the property. A jury trial was demanded. We think that there were triable issues of fact as to the nature and duration of the defendant's tenancy and that it was error to direct the verdict.

Reversed.

Judges CAMPBELL and BRITT concur.