WILLIAM JAMES CHANDLER AND MYRA R. CHANDLER v. U-LINE CORPORATION v. EATON CORPORATION

No. 8726SC922

(Filed 20 September 1988)

1. **Uniform Commercial Code § 14— valve in ice maker—warranty of fitness for particular purpose—sufficiency of evidence of defect**

In an action to recover for damages allegedly caused by a leaking ice maker in a refrigerator manufactured by defendant where defendant filed a third-party complaint against the manufacturer of a valve used in the ice maker, the trial court properly denied the valve manufacturer's motion for directed verdict on the breach of warranty of merchantability issue since the evidence was sufficient to show that the valve was defective in design and thus was not fit for the ordinary purpose for which it was used, and the evidence presented a jury question as to whether the leakage was due to the design of the valve or whether it was caused by overtightening at the refrigerator manufacturer's plant. N.C.G.S. § 25-2-314.

2. **Trial § 43— foreman's mistake in writing down jury verdict—jurors' testimony admissible**

The trial court erred in excluding under N.C.G.S. § 8C-1, Rule 606(b) jurors' evidence of a mistake in writing down the jury's verdict, since that rule makes it clear that a juror may not testify as to any matter occurring during the course of deliberations, but the evidence in question in this case dealt with a clerical error rather than a matter occurring during deliberations, and the evidence did not concern the mental processes involved in the jury's determination; however, the trial judge could not reform the verdict of the jury where the evidence of the alleged clerical error in recording the verdict did not come to the attention of the court until several days after the jury was discharged, and the trial court therefore had no authority to reform the verdict or to reassemble the jury.

3. **Trial § 43— mistake in recording verdict—testimony by only two jurors insufficient to support new trial order**

> The evidence of only two of the jurors rather than all twelve that there was a mistake in the recording of the verdict was as a matter of law insufficient to support an order for a new trial. N.C.G.S. § 1A-1, Rule 59(b).

APPEAL by third-party defendant Eaton Corporation and defendant and third-party plaintiff U-Line Corporation from *Allen (C. Walter), Judge.* Judgment entered 27 January 1987 and order entered 26 February 1987 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 11 February 1988.

*W. James Chandler and Brian deBrun for plaintiff-appellees.*

*Jones, Hewson & Woolard, by Harry C. Hewson and Hunter M. Jones, for defendant-appellant U-Line Corporation.*

*Petree Stockton & Robinson, by J. Neil Robinson, for defendant-appellant Eaton Corporation.*

GREENE, Judge.

This is an action in which plaintiffs sue defendant U-Line Corporation (hereinafter "U-Line") for damages which plaintiffs allege were caused by a leaking ice maker in a refrigerator manufactured by U-Line. The leak occurred when a plastic portion of a valve cracked while plaintiffs were away from their home on vacation and caused extensive damage to the home.

Plaintiffs brought causes of action sounding in strict liability, negligence, and breach of express and implied warranties. Defendant U-Line denied liability in its answer and filed a third-party complaint alleging any damage for which it was found liable was caused by a defective valve manufactured by Eaton Corporation (hereinafter "Eaton").

Eaton answered and denied liability. At trial, plaintiffs sought to show that an over-tightening of a brass nozzle connected to the valve caused stress which resulted in the fracture. U-Line and Eaton both sought to show the leak was caused by water freezing in the valve. They alleged the freezing was due to plaintiffs failing to properly heat the area of their home where the refrigerator was located. At the close of plaintiffs' and U-Line's evidence, Eaton moved for a directed verdict against

U-Line on the breach of warranty issue. The trial judge denied this motion.

At the close of all the evidence, the jury retired with the following five issues:

> 1. Did Defendant U-Line Corporation expressly warrant to the Plaintiffs William James Chandler and Myra R. Chandler that the icemaker (sic) was fit for the ordinary purposes for which such icemaker (sic) was intended?
>
> 2. Did Defendant U-Line Corporation impliedly warrant to the Plaintiffs William James Chandler and Myra R. Chandler that the icemaker (sic) was fit for the ordinary purposes for which such icemaker (sic) was intended?
>
> 3. Was the warranty breached by Defendant U-Line Corporation?
>
> 4. Did Third-Party Defendant Eaton Corporation impliedly warrant to Defendant U-Line Corporation that the valve was fit for the ordinary purposes for which such valve was intended?
>
> 5. Was the warranty breached by Third-Party Eaton Corporation?

After the jury finished deliberating, it returned to the courtroom and handed its verdict to the clerk. The verdict sheet indicated the jury answered "Yes" to each of the five issues. The jury was then generally polled as follows:

> [CLERK]: Will the members of the jury please stand? Ladies and gentlemen of the jury, you have answered the issues as follows: Number one, "Yes"; Number Two, "Yes"; Number Three, "Yes"; Number Four, "Yes"; and Number Five, "Yes." Was this your verdict, so say all of you?
>
> "Yes."

The jury was then dismissed and judgment was entered for the stipulated amount of $15,596.57 in favor of plaintiffs and U-Line.

On 30 January 1987, Eaton's counsel, Neil Robinson, telephoned one of the members of the jury, James Freeman, to obtain a general critique of Robinson's presentation of Eaton's case. Dur-

ing the conversation, and on his own volition, Freeman informed Robinson that the jury foreman, Howard Pugh, had made a mistake in writing down the answer to Issue Five on the verdict sheet. Issue Five concerned whether Eaton had breached the warranty to U-Line. Freeman told Robinson that the jury had voted "No" on this issue but Pugh had inadvertently written down "Yes." Freeman indicated he brought this mistake to Pugh's attention after the trial judge had excused the jury but Pugh indicated that because the jury had been dismissed, he did not think there was anything that could be done.

Robinson then telephoned U-Line's counsel and told him that he was going to contact Pugh about the alleged mistake. Robinson telephoned Pugh and told Pugh what Freeman had related. Pugh indicated that he had made an error but did not realize it until after the trial judge had dismissed the jury and it was called to his attention by several jurors in the hallway outside the courtroom. He also indicated that he did not tell the trial judge of the mistake because he thought there was nothing that could be done about it at that stage.

On 2 February 1987, Eaton made a motion pursuant to N.C.G.S. Sec. 1A-1, Rules 59 and 60 asking the court to reform the answer to Issue Five to reflect the jury's actual verdict or, in the alternative, to grant a new trial on that issue. Attached to the motion were affidavits from Freeman and Pugh relating the information which they had previously given to Robinson. At a hearing on 12 February 1987, Freeman and Pugh testified and reiterated the matters contained in their affidavits. U-Line objected to the court's consideration of the affidavits and testimony.

The trial judge sustained U-Line's objections to the evidence of the jurors pursuant to N.C.G.S. Sec. 8C-1, Rule 606(b) (1983) and denied Eaton's motions. Eaton appeals to this Court arguing the trial judge should have granted its motion for a directed verdict on the warranty issue, or alternatively, should have considered the jurors' testimony and reformed the verdict or granted a new trial.

---

This case presents the following issues: I) whether the trial judge erred in denying Eaton's motion for a directed verdict concerning the breach of the implied warranty of merchantability;

and II) whether the trial judge erred in excluding the jurors' evidence of a mistake in recording the verdict.

I

In determining whether evidence is sufficient to survive a motion for directed verdict, the trial court must consider all evidence in the light most favorable to the non-movant, and give that party the benefit of all reasonable inferences arising from the evidence. *Murray v. Murray*, 296 N.C. 405, 250 S.E. 2d 276 (1979). However, evidence which only raises a possibility or conjecture of fact is not sufficient to withstand a motion for a directed verdict. *Ingold v. Carolina Power and Light Co.*, 11 N.C. App. 253, 181 S.E. 2d 173 (1971).

In order to survive a motion for directed verdict in an action for breach of the implied warranty of merchantability under N.C. G.S. Sec. 25-2-314, the purchaser must present sufficient evidence to show:

> [F]irst that the goods bought and sold were subject to an implied warranty of merchantability; second, that the goods did not comply with the warranty in that the goods were defective at the time of sale; third, that the injury was due to the defective nature of the goods; and fourth, that damages were suffered as a result. . . . The burden is upon the purchaser to establish a breach by the seller of the warranty of merchantability by showing that a defect existed at the time of the sale.

*Morrison v. Sears, Roebuck and Co.*, 319 N.C. 298, 301, 354 S.E. 2d 495, 497 (1987) (citations omitted) (quoting *Cockerham v. Ward*, 44 N.C. App. 615, 624-25, 262 S.E. 2d 651, 658, *disc. rev. denied*, 300 N.C. 195, 269 S.E. 2d 622 (1980) ). Eaton does not argue the valve was not subject to the implied warranty of merchantability but maintains there was no evidence that a defect in the valve caused the damage and even if there was a defect U-Line failed to show the defect existed at the time of the valve's sale from Eaton to U-Line.

A

[1] The evidence at trial tended to show that Eaton designed and manufactured the plastic valve. This valve allowed water into

the ice maker once a tray of ice had been made and deposited. A line providing water to the ice maker was connected to the valve by means of a brass nozzle. This connection took place at U-Line's plant. Plaintiff's expert, Dr. Norman Cope, gave inconsistent answers concerning his opinion of whether a defect in the Eaton valve caused the leak. Initially, Cope testified the over-tightening of the brass nozzle to plastic threads located on the valve caused stress which weakened the valve and eventually led to breakage along the threads. Cope also stated that the type of break in the valve indicated that leakage might not occur immediately upon connection to a water source.

However, Cope later testified upon viewing the valve on the stand that he noticed for the first time that only two threads on the valve were mating with the nozzle and that this was insufficient to give a secure fitting. He went on to testify that the threads on the plastic valve were not properly designed for the brass nozzle. On cross-examination by Eaton, in response to a question about whether the design of the valve caused the leakage, Cope testified "Not that I have been able to see."

Nevertheless, immediately thereafter, when cross-examined by U-Line, Cope testified as follows:

Q. [U-Line] In other words, the fact that this plastic part was designed, if it was, for the hose connector with only two threads engaging would, in your opinion, add to the stress and contribute to the failure that you found?

A. [Cope] That would be the theoretical outlook on that.

Q. Well that, you are the expert. That's your testimony, isn't it?

A. Yes.

While Cope's testimony is certainly subject to differing inferences, it is well settled that conflicts in the evidence must be resolved in favor of the non-movant in a motion for a directed verdict. *Arnold v. Sharpe*, 296 N.C. 533, 251 S.E. 2d 452 (1979). Furthermore, evidence in favor of the non-movant must be taken as true, *Snow v. Duke Power Co.*, 297 N.C. 591, 256 S.E. 2d 227 (1979), and credibility of testimony is for the jury. *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971). Viewing the evidence in the

light most favorable to U-Line, we hold it was sufficient to show that the valve was defective in that it was not fit for the ordinary use for which it was used. *See* N.C.G.S. Sec. 25-2-314(2)(c) (1986) ("Goods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used . . .").

### B

Eaton also contends there was not sufficient evidence to demonstrate the valve was defective at the time of the sale by Eaton to U-Line. However, Cope's testimony was that the defect was in the *design* of the valve for the brass fitting, rather than in the manufacture of the valve itself. His testimony that the design of the valve with only two threads could have contributed to the failure was sufficient to show the valve was not fit for the ordinary purposes for which it was used. Cope further testified that the valve in question was identical to a design diagram drawn by Eaton and entered into evidence at trial. Therefore, it was for the jury's determination as to whether the leakage was due to an inadequate number of threads on the valve or whether it was caused by over-tightening at U-Line's plant.

### II

Eaton next argues the trial judge erred in excluding the jurors' evidence of a mistake in writing down the jury's verdict. Affidavits from two jurors indicated the jury unanimously voted to answer "No" to the issue of Eaton's breach of warranty but that the foreman mistakenly wrote "Yes" on the verdict sheet. Eaton argues this evidence was admissible and therefore the trial judge, after accepting this evidence, should have corrected the verdict and entered judgment for Eaton, or alternatively, granted a new trial.

### A

[2] In the present case, the trial judge ruled the juror evidence inadmissible under N.C.G.S. Sec. 8C-1, Rule 606(b). Whether evidence of the jury foreman's error in writing down the verdict was excluded by Rule 606(b) is a question of law. Although a motion for a new trial is normally addressed to the sound discretion of the trial judge, where the trial judge acts based on an error in law, his decision is reviewable. *See Smith v. Price*, 315 N.C. 523, 533, 340 S.E. 2d 408, 414 (1986); *Selph v. Selph*, 267 N.C. 635, 638,

148 S.E. 2d 574, 577 (1966); *see also Britt v. Allen*, 291 N.C. 630, 635, 231 S.E. 2d 607, 611 (1977). If the juror evidence was admissible, the trial judge should have considered it in determining whether to grant a new trial, reform the verdict, or allow the jury's decision to stand.

Rule 606(b) provides:

> (b) *Inquiry into validity of verdict or indictment.*—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

*Id.*

The general rule of exclusion renders inadmissible testimony concerning mental processes of jurors or testimony about any matter or statement occurring during deliberations unless it fits the two stated exceptions. *Id.* comment. While there are few North Carolina cases interpreting Rule 606(b), the rule is identical to its federal counterpart. Federal interpretations of the rule are of course in no way binding on this court; however, the rules were not adopted in a vacuum and federal cases may be looked to for assistance in determining the intent of the General Assembly in adopting the rules. N.C.G.S. Sec. 8C-1, Rule 102 comment.

The reasons for the general rule of exclusion in Rule 606(b) are: (1) to prevent harassment of jurors by the defeated party in an effort to discover misconduct sufficient to set aside the verdict, *Tanner v. United States*, 483 U.S. ---, 97 L.Ed. 2d 90, 105-06, 107 S.Ct. 2739, 2747 (1987) (citing *McDonald v. Pless*, 238 U.S. 264, 267-68, 59 L.Ed. 1300, 1302, 35 S.Ct. 783, 784 (1915)); (2) the government's interest in insulating the jury's deliberative process,

*id.*; (3) preventing the disruption of the finality of the process, *id.*; and (4) dissuading tampering of the process by preventing fraud by individual jurors who could remain silent during deliberations and later assert they were influenced by improper considerations, *United States v. Eagle*, 539 F. 2d 1166, 1170 (8th Cir. 1976), *cert. denied*, 429 U.S. 1110 (1977); *see also Government of Virgin Islands v. Gereau*, 523 F. 2d 140, 148 (3d Cir. 1975), *cert. denied*, 424 U.S. 917 (1976).

However, weighed against these policies are the wrongs visited on the losing party where there is an error in the rendition of a verdict. *See McDonald*, 238 U.S. at 268, 59 L.Ed. at 1302, 35 S.Ct. at 784-85. As such, flat application of the exclusionary rule may be unjust in certain circumstances.

Recognizing that wholesale exclusion of juror evidence might create unjust results, the drafters of Rule 606(b) created certain limited exceptions to the general rule. However, the facts of this appeal present neither of the stated exceptions: the case of extraneous prejudicial information which is improperly brought to the jury's attention or the case of outside influence which was improperly brought to bear upon any juror. Therefore, we must determine whether Rule 606(b) excludes evidence of errors made in the recording of the verdict.

Federal authorities have generally held juror evidence concerning a mistake in the transmission of a verdict is not excludable under the rule. *See, e.g., Attridge v. Cencorp Div. of Dover Tech. Intern., Inc.*, 836 F. 2d 113 (2d Cir. 1987) (admissibility of juror testimony hinges upon purpose for which it is offered); *United States v. Dotson*, 817 F. 2d 1127 (5th Cir. 1987) (affidavit of juror is admissible to show verdict was not that actually agreed upon); *Young v. U.S.*, 163 F. 2d 187 (10th Cir. 1947), *cert. denied*, 332 U.S. 770 (1947) (prior testimony admissible to show that through inadvertence or mistake verdict announced was not the one on which agreement had been reached); *see also* 3 J. Weinstein and M. Berger, Weinstein's Evidence par. 606[04] at 606-40 (1987); Mueller, *Jurors' Impeachment of Verdicts and Indictments in Federal Court under Rule 606(b)*, 57 Neb. L. Rev. 920, 958 (1978) (recognizing that the erroneous reporting of a verdict is one of the most likely post-deliberative occurrences not excluded by Rule 606(b) which may be proved by testimony of jurors).

We believe the federal courts are correct in their interpretations. The rule makes clear that a juror may not testify as to any matter occurring *during the course of deliberations.* Here, the proffered evidence concerned matters occurring *after* deliberations and did not fall within the rule's general exclusion. The evidence dealt with a clerical error, rather than a matter occurring during deliberations. Furthermore, the evidence did not concern the mental processes involved in the jury's determination. Therefore, we hold the trial judge erred in excluding the evidence under Rule 606(b). *See* Rule 606 comment ("Allowing [jurors] to testify as to matters other than their own innerreactions involves no particular hazard to the values" Rule 606 seeks to protect); Rule 601 (stating that every person is competent as a witness except as otherwise provided in the rules); *cf. State v. Costner*, 80 N.C. App. 666, 671, 343 S.E. 2d 241, 244 (testimony concerning what jury foreman said and how jury voted on his inquiries excluded under Rule), *disc. rev. denied*, 317 N.C. 709, 347 S.E. 2d 444 (1986).

## B

We must nonetheless determine if the evidence of the jurors is prohibited by other North Carolina law. There are some evidence questions that are not within the coverage of the rules of evidence. N.C.G.S. Sec. 8C-1, Rule 102 comment. In these instances, North Carolina precedents continue to control unless changed by our courts. *Id.*

In this regard our courts have consistently held that the general rule prohibiting jurors from impeaching their own verdict, *Stone v. Baking Co.*, 257 N.C. 103, 106, 125 S.E. 2d 363, 365 (1962), does not prevent the reception of evidence from jurors on the issue of whether a clerical error was made by the jury in recording their verdict. *McCabe Lumber Co. v. Beaufort County Lumber Co.*, 187 N.C. 417, 418, 121 S.E. 755, 756 (1924) ("the agreement reached by the jury, and not the written paper filed, is the verdict"); *Bundy v. Sutton*, 207 N.C. 422, 427, 177 S.E. 420, 422 (1934) (a jury may correct its verdict when verdict does not correctly express the actual agreement of the jurors). Upon receipt of such evidence, the trial judge, if the jury has not been discharged, may permit juries to reassemble and correct their verdicts. *Mitchell v. Mitchell*, 122 N.C. 332, 333, 29 S.E. 367 (1898).

Such a procedure is "essential to securing a fair trial and a correct verdict." *Cole v. Laws*, 104 N.C. 651, 657, 10 S.E. 172, 174 (1889). However, if the jury has been discharged, the trial court is without authority to reassemble the jury to correct a verdict. *Livingston v. Livingston*, 213 N.C. 797, 799, 197 S.E. 597, 598 (1938). Accordingly, we reject the argument of Eaton that the trial judge erred in not reforming the verdict of the jury. The evidence of the alleged clerical error in recording the verdict did not come to the attention of the court until some several days after the jury was discharged and therefore the trial court had no authority to reform the verdict or to reassemble the jury.

## C

[3] We nonetheless must consider whether the evidence of the two jurors is sufficient to support a motion for a new trial pursuant to N.C.G.S. Sec. 1A-1, Rule 59(9) (1983). That statute provides:

> (a) *Grounds* — a new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:
>
>     . . . .
>
> (9) Any other reasons heretofore recognized as grounds for a new trial.

N.C.G.S. Sec. 1A-1, Rule 59(9) (1983).

We believe Rule 59(9) authorizes the trial judge to grant a new trial where, after the jury has been discharged, there comes to the attention of the court that an error has occurred in the recording of the jury verdict. *See Selph*, 267 N.C. at 637, 148 S.E. 2d at 575 (trial judge has discretion to set aside a jury verdict when "it would work injustice to let it stand"); *Walston v. Greene*, 246 N.C. 617, 99 S.E. 2d 805, 806 (1957) (affirming grant of new trial where trial judge set aside verdict because "justice and equity" required him to do so). However, the trial judge must exercise great caution in setting aside a jury verdict and granting a new trial and should in no event grant such motion unless

> . . . the verdict as announced or delivered is different — and *all* of the jurors agree that it is different — from the verdict as assented to in the jury room at the time of voting . . .

8 Wigmore on Evidence Sec. 2355, p. 718-19 (emphasis added). *See Britten v. State*, 567 S.W. 2d 64 (1978) (the affidavits of eleven of twelve jurors was not sufficient to establish an unanimous mistake in recording the verdict of the jury); *Angelina Casualty Co. v. Spencer*, 310 S.W. 2d 682 (1958) (testimony of one juror that there was a clerical mistake in rendering the jury verdict was not conclusive and new trial properly denied); *Setzer v. Latimer*, 40 Ga. App. 247, 149 S.E. 281 (1929) (new trial allowed where affidavits of all jurors were offered as evidence in support of motion for new trial); *Caylat v. Houston E. & W. T. Ry. Co., et al.*, 113 Tex. 131, 252 S.W. 478 (1923) (jury verdict set aside and new trial ordered on basis of affidavits of all twelve jurors that foreman made error in recording the verdict).

Here, while the motion for a new trial including the affidavits of the two jurors was made within ten days of the judgment as required by Rule 59(b), we hold the evidence of only two of the jurors that there was a mistake in the recording of the verdict is as a matter of law insufficient to support an order for a new trial. Accordingly, there was no error committed by the trial court in denying Eaton's motion to set aside the verdict and declare a new trial.

### III

Because we have declined to order a new trial, we need not reach the merits of defendant U-Line's appeal.

For the reasons stated, we affirm the trial court's denial of Eaton's motion for a directed verdict and the denial of Eaton's motion for a new trial.

Affirmed.

Judge WELLS concurs.

Judge EAGLES concurs in the result.