HANDEX OF THE CAROLINAS, INC., PLAINTIFF v. COUNTY OF HAYWOOD, AND
MUNICIPAL ENGINEERING SERVICES COMPANY, P.A., DEFENDANTS

No. COA03-1658

(Filed 18 January 2005)

**1. Contracts— professional negligence in performance of
contract—failure to allege contractual privity or intended
third-party beneficiary—directed verdict**

The trial court did not err by granting directed verdict in
favor of defendant engineering company on plaintiff's contract
claims for professional negligence arising out of a contract for
the extension of a county landfill, because: (1) where there were
no allegations of contractual privity or that plaintiff was an
intended third-party beneficiary under the professional contract,
plaintiff's exclusive remedy against the professional sounds in
tort; and (2) plaintiff's complaint does not allege privity of con-
tract with defendant or that plaintiff was an intended third-party
beneficiary of the contract between defendant county and
defendant engineering company.

**2. Negligence— professional negligence—directed verdict**

The trial court did not err by granting directed verdict in
favor of defendant engineering company on plaintiff's claim for
professional negligence regarding the standard of care for a civil
engineer administering a landfill project, because: (1) the lay tes-
timony of plaintiff's civil engineer did not rebut the relevant

1

standard of care set out by defendant's expert civil engineer; (2) viewed in its most favorable light, plaintiff's lay testimony established the witness's opinion of what the administering engineer should have done in overseeing the bidding and contract modifications requests and it does not show, as required to sustain the claim, what an engineer practicing under the relevant standard of care actually does nor any specific instances of breach of that relevant standard; and (3) the alleged breaches to the standard of care for administering this landfill project, concerning the localized expectations and terms of art relating to excavation and landfill construction, does not fall within the realm of a layperson's common knowledge and experience.

**3. Costs— depositions—mediation fees—witness fees—service of process fees for trial subpoenas**

The trial court's order in a general contract/tort based civil action awarding defendant company costs under N.C.G.S. § 6-20 for depositions, mediation fees, witness fees, and service of process fees for trial subpoenas is remanded for a modification to eliminate the award of deposition costs, because: (1) costs under N.C.G.S. § 6-20 is limited to those items enumerated in N.C.G.S. § 7A-305(d), and the trial court does not have discretion to award costs under N.C.G.S. § 6-20 which are not enumerated; and (2) there is no statutory authority for the award of deposition costs.

**4. Construction Claims— breach of contract—timeliness of notice to proceed with construction**

The trial court erred by failing to grant directed verdict in favor of defendant county for contractual breaches that were not submitted to defendant engineering company as a claim for contract modification regarding the extension of a landfill based on defendant county allegedly causing delay in issuing the notice to proceed with the construction, because: (1) defendant county gave timely notice under the terms of the bid and contract; and (2) there was no evidence of breach of contract or claim made for a time extension due to the agreed change from Alternative 1 to Alternative 2.

**5. Construction Claims— breach of contract—lost timber value**

The trial court did not err by denying defendant county's motion for directed verdict for contractual breaches that were not submitted to defendant engineering company as a claim for contract modification regarding the extension of a landfill based

on lost timber value on the contract site based on the county clearing 20 acres of timber on the landfill site after the bids had been accepted for the landfill and despite language in the contract that all timber shall become property of the contractor, because: (1) the general conditions language of the contract is ambiguous as to whether the question of whose property the timber was at the time of the clear cutting falls withing the purview of a dispute or other matter relating to the acceptability of the work or the performance of the work; and (2) the issue was properly presented to the jury when any delay in the removal of the remaining stumps was proximately caused by this breach.

## 6. Construction Claims— breach of contract—additional time and travel costs

The trial court erred by failing to grant defendant county's motion for directed verdict for contractual breaches that were not submitted to defendant engineering company as a claim for contract modification regarding the extension of a landfill based on additional time and travel costs of defendant company's management, because: (1) as a condition precedent for raising them in subsequent litigation, the costs should have been requested as part of a change order for the work to which they were directly related; and (2) judging by the eight change orders sought under this construction contract, defendant county had not waived the requirement of section 12.01 of the General Conditions that additional cost requests must be made through change orders.

## 7. Construction Claims— lost timber revenue—rock removal and blasting—additional time cost—undercutting of unsuitable soils

Claims arising from the construction of a landfill extension which were proper for the jury to consider should have been limited to: (1) lost timber revenue from the county's clear-cutting of the landfill site and damages related to stump removal; (2) evidence of the claim for rock removal and blasting and related damages due to its denial of negotiating its price as stated in Addendum 1 (change order #2); (3) evidence of additional time as authorized by the contract for abnormal weather conditions which had occurred within the scope of the contract's time for substantial completion and final payment (change order #3); and (4) undercutting of unsuitable soils as approved by defendant company (change order #4).

**8. Trials— motion for new trial—single-figure verdict**

A new trial should be granted to determine both the question of liability and damages as to the four claims for lost timber revenue, rock removal and blasting, additional time, and undercutting of unsuitable soils, because in light of the single-figure jury verdict, it cannot be determined whether the jury awarded damages pursuant to any of the four claims properly submitted to the jury.

**9. Damages and Remedies— liquidated damages—substitute for actual damages**

While liquidated damages may still be awarded even if no actual damages arise from the breach, they cannot be awarded in addition to actual damages because it would constitute double recovery. Therefore, at any new trial, the liquidated damages provision of the pertinent contract shall be deemed as a substitute for any actual damages suffered by defendant county due to plaintiff company's delay.

**10. Damages and Remedies— alteration of verdict—liquidated damages—monies retained by county**

Without more evidence, the trial court did not have authority to alter the verdict so substantially from the $16,000 sum the jury returned as a verdict to $137,107.60 that the trial court interpreted as the amount withheld by defendant county over and above the jury's finding of $16,000 liquidated damages. However, the question of liquidated damages and monies retained by defendant county may again be argued and clarified since a new trial has been granted on plaintiff company's remaining claims.

Appeal by plaintiff from order entered 17 April 2003 by Judge James L. Baker, Jr., and appeal by defendant County of Haywood from judgment entered 6 May 2003 by Judge James L. Baker Jr., in Haywood County Superior Court. Heard in the Court of Appeals 14 September 2004.

*Roberts & Stevens, P.A., by Sarah Patterson Brison Meldrum and Walter L. Currie, for plaintiff appellant-appellee.*

*Jeffrey W. Norris & Associates, P.L.L.C., by Jeffrey W. Norris, for defendant appellant-appellee County of Haywood.*

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Philip J. Smith and W. James Johnson, for defendant appellee Municipal Engineering Services, Inc.*

McCULLOUGH, Judge.

This appeal arises from the alleged breaches of duties owed by all parties under a contract for the extension of an existing landfill ("the landfill" or "the project") site in the White Oak section of Haywood County. The extension was to create a new landfill cell, approximately ten acres in surface area, to meet the County's solid waste disposal needs. Parties to the appeal are: County of Haywood (County), who solicited bids and then was contractually bound for the additional excavation of the landfill; Handex of the Carolinas, Inc. (Handex), who upon submitting the lowest bid was awarded the contract for the project by the County ("the contract"); and Municipal Engineering Services ("MES"), who was contracted by the County to provide a number of engineering services related to the bidding and performance of the project (the "County-MES contract"). Due to a number of problems arising from the performance of the contract, Handex brought suit against MES for professional negligence and breach of contract, and against the County for breach of contract. The County counterclaimed for breach of contract.

**The Facts**

*I. The Bidding Process*

The County-MES contract consisted of the following engineering services: providing design services, reviewing and obtaining lump-sum bids, administering contract performance, and reviewing and advising on change orders by the contractor. For the project, MES prepared the contract documents and specifications along with the lump-sum bid advertisement, instructions to bidders, and the bid form. This was made part of the contract. The bids were based on certain specifications, specifically that the site work for the project consisted of "approximately 160,000 cubic yards of spoil, excavation, compaction, tests, waste disposal, berm construction, etc." The bid form and instructions called for a base bid portion, plus bids on Alternative 1 (utilizing a clay liner) and Alternative 2 (utilizing a synthetic liner). Handex was the low bidder for both alternatives and was awarded the contract for Alternative 1, as notified by letter 14 September 2000. In that letter, MES informed Handex that Notice to Proceed was expected for 21 September 2000, after a Permit to

Construct had been issued by North Carolina Waste Section ("NCWS"). MES informed Handex that a preconstruction meeting was required to be held.

## II. Notice to Proceed

The preconstruction meeting was held with NCWS in mid-October 2000. The record indicates NCWS had recently modified their requirements, and was then allowing liner systems like that in the County's advertised bid as Alternative 2. Handex's bid for Alternative 2 was $8,960.00 less than their bid for Alternative 1. Testimony of the County Manager, Mr. Jack Horton ("Mr. Horton"), asserted that Handex insisted on Alternative 2, and that the contract had to be re-awarded. Mr. Horton testified further that he believed that the County accepted Alternative 2 because "Alternative 2 would actually be a lot quicker and shorten the time of construction as compared to Alternate 1." Handex's representative at the preconstruction meeting testified that it was an "open discussion" upon which Alternative 2 was generally decided. Alternative 2 was bid for a total lump-sum price of $2,272,343.61. The County and Handex entered into a written contract for the base bid work and Alternative 2 on or about 13 October 2000. In a letter dated 8 November 2000, MES gave Handex "Notice To Proceed" as of 13 November 2000.

## III. Implementation of the Contract

The contract provided Handex 180 days from the Notice to Proceed to achieve Substantial Completion on the landfill, and 45 days from Substantial Completion to be ready for Final Payment. The date of Substantial Completion was to be 12 May 2001 and Final Completion 45 days thereafter. If Handex did not complete within those times, the contract allowed the County to retain $1,000.00 for each day Handex was late in reaching Substantial Completion, and $500.00 for each day until Final Completion. Under the contract, these were to be assessed as liquidated damages should Handex finish late, obligating the County to pay only the difference of monies owed under the contract upon Final Completion. Handex completed the work 93 days beyond the Substantial Completion date, and 10 days beyond Final Completion.

The contract contained three sections: the General Conditions section, the General Specifications section, and the Project Specifications section. The Project Specifications section covers only requirements differing from what appears in the General

Specifications section. The contract required that, if Handex desired to make a claim during the course of the project as to one of its terms, or a Change Order for time or money, these claims would be submitted to MES. Section 9.09 of the General Conditions states in pertinent part:

> A. ENGINEER will be the initial interpreter of the requirements of the Contract Documents and judge of the acceptability of the Work thereunder. Claims, disputes and other matters relating to the acceptability of the Work, the quantities and classifications of Unit Price Work, the interpretation of the requirements of the Contract Documents pertaining to the performance of the Work, and Claims seeking changes in the Contract Price or Contract Times will be referred initially to ENGINEER in writing, in accordance with the provisions of paragraph 10.05, with a request for a formal decision.

> B. When functioning as interpreter and judge under this paragraph 9.09, ENGINEER will not show partiality to OWNER or CONTRACTOR and will not be liable in connection with any interpretation or decision rendered in good faith in such capacity.

Section 10.05 of the General Conditions of the contract provided:

> A. *Notice*: Written notice stating the general nature of each Claim, dispute, or other matter shall be delivered by the claimant to ENGINEER and the other party to the Contract promptly (but in no event later than 30 days) after the start of the event giving rise thereto. Notice of the amount or extent of the Claim, dispute, or other matter with supporting data shall be delivered to the ENGINEER and the other party to the Contract within 60 days after the start of such event.

During the course of the project construction, there were eight attempts made to modify or change the contract terms or specifications. Of these, the County and MES approved only one, and MES recommended another be modified which was denied by the County. Handex appealed each of the seven denials by the County. Additionally, under the terms of the contract, Handex took issue with the delayed start time of the project, additional expenses absorbed by Handex in finishing the project, and timber removal from the project site by the County.

### III.  Litigation/Judgment/Issues on Appeal

On 21 December 2001, Handex filed a complaint initiating this action against MES for professional negligence and breach of contract and against Haywood for breach of contract. MES filed their answer 8 March 2002. The County filed their answer and a counterclaim seeking to recover the agreed upon amount for liquidated damages under the contract and engineering fees from Handex.

A trial was held 7-17 April 2003. At the close of all evidence, MES and the County moved for directed verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(a) (2003). The trial court granted a directed verdict in favor of MES, dismissing all claims against MES with prejudice. In a later order, the trial awarded MES "costs" in the amount of $6,919.17. Handex appealed both of these orders.

At the close of all evidence, the trial court denied the County's motion for directed verdict. The court also denied the County's request that the jury be given a detailed verdict sheet, and instead allowed the jury a single figure verdict sheet. This verdict sheet also provided for the award of liquidated damages and engineering costs to the County. The jury rendered a verdict against the County for breach of contract and awarded Handex damages. The judgment entered by the court ordered the County to pay the following: $201,928.41 for the damages of the breach of contract, less $1.00 in damages Handex could have avoided; and, $137,107.60 of monies owed to Handex under the contract, as this figure was the difference between the $153,107.60 retained by the County as liquidated damages and the $16,000.00 the jury actually awarded. The County filed a motion for judgment notwithstanding the verdict ("JNOV"), a motion to amend the judgment, or in the alternative, a motion for a new trial. These motions were denied in an order by the trial court. The court further awarded Handex "costs." The County appealed.

Additional evidence, facts, and relevant contract provisions are raised as necessary in the legal analysis below.

### Handex's Appeal

In their appeal, Handex raises two issues: Handex argues that the trial court erred in granting a directed verdict in favor of MES; and that the court erred in awarding MES costs. We address these in turn.

### I. Directed Verdict in Favor of MES

#### A. Standard of Review

When ruling on a motion for a directed verdict, the trial court must consider the evidence in the light most favorable to the non-movant, taking the evidence supporting the nonmovant's claims as true with all contradictions, conflicts, and inconsistencies resolved in the nonmovant's favor so as to give the nonmovant the benefit of every reasonable inference. *Newton v. New Hanover County Bd. of Education*, 342 N.C. 554, 563, 467 S.E.2d 58, 65 (1996). " 'On appeal the standard of review for a JNOV . . . is the same as that for a directed verdict,' " requiring the issue be presented to a jury if there is more than a scintilla of evidence to support each element of the nonmovant's *primae facie* case. *Kearns v. Horsley*, 144 N.C. App. 200, 207, 552 S.E.2d 1, 6, *disc. review denied*, 354 N.C. 573, 559 S.E.2d 179 (2001) (citations omitted).

#### B. Handex's Claims

In the case at bar, Handex brought claims for breach of contract and breach of professional negligence against MES.

##### 1. Contract Claims

[1] For Handex to survive a directed verdict motion for its contract claims against MES for professional malpractice, Handex was required to present beyond a scintilla of evidence either privity of contract with MES and elements of contractual breach, or that Handex was an intended third party beneficiary of the County-MES contract, of which Handex was denied its intended benefits due to some breach by MES. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 404, 580 S.E.2d 1, 6, *aff'd per curium*, 357 N.C. 567, 597 S.E.2d 673 (2003). In *Leary*, we clarified the divisions of this somewhat con-voluted area of professional malpractice claims, stating that where there is neither allegations of contractual privity, or that the plaintiff was an intended third-party beneficiary under the professional con-tract, that plaintiff's exclusive remedy against the professional sounds in tort. *Id. See also Davidson and Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 667, 255 S.E.2d 580, 584, *disc. review denied*, 298 N.C. 295, 259 S.E.2d 911 (1979) (where we held that an architect, in the absence of privity of contract, may be sued by a gen-eral contractor for breach of an architect's *common law duty of due care* in the performance of his contract with the owner, but that nei-ther the general contractor nor a subcontractor could maintain a

cause of action alleging negligent performance of the architect's contract with the County).

There were two contracts in play governing the landfills construction: the County-MES contract, where MES was to provide various engineering services to the County for the landfill project; and the contract between the County and Handex for the excavation work and construction of the landfill.

Handex's complaint does not allege privity of contract with MES, nor that Handex was the intended third-party beneficiary of the County-MES contract. Their complaint refers only to the terms set forth in Article 9 of the County-Handex contract, and alleges as a contractual claim that, "[t]he Engineer has breached its contractual duties owed to Handex under the Contract." The "Contract" being referred to is the County-Handex contract. Handex alleges its contractual claims stem from Section 9.09(B) of the County's contract with Handex, as set out above. Without providing more, we do not believe this is sufficient to find contractual privity between Handex and MES, nor is it sufficient for Handex to raise a claim as a third-party beneficiary under the County-MES contract. Therefore, we need not consider the evidence supporting Handex's breach of contract theory, as we find no basis for MES's liability to Handex sounding in contract. The trial court was not in error in granting directed verdict on this issue.

This assignment of error is overruled.

### 2. Professional Negligence

[2] To survive a motion for directed verdict on a claim of professional negligence, Handex was required to present more than a scintilla of evidence for each of the following elements: (1) the nature of MES's profession; (2) MES's duty to conform to a certain standard of conduct; and (3) a breach of the duty proximately caused injury to Handex. *See Greene v. Pell & Pell L.L.P.*, 144 N.C. App. 602, 604, 550 S.E.2d 522, 523 (2001); *see also, Davidson & Jones, Inc.*, 41 N.C. App. at 667, 255 S.E.2d at 584. At issue in this appeal is whether Handex provided sufficient evidence of the relevant standard of care for a professional civil engineer akin to that applied by MES, and whether or not MES breached that standard.

"The standard of care provides a template against which the finder of fact may measure the actual conduct of the professional. The purpose of introducing evidence as to the standard of care in a

professional negligence lawsuit 'is to see if this defendant's actions "lived up" to that standard[,]' " and generally this is established by way of expert testimony. *Associated Indus. Contr'rs, Inc. v. Fleming Eng'g, Inc.*, 162 N.C. App. 405, 410, 590 S.E.2d 866, 870 (2004) (quoting *Little v. Matthewson*, 114 N.C. App. 562, 567, 442 S.E.2d 567, 570 (1994), *aff'd per curiam*, 340 N.C. 102, 455 S.E.2d 160 (1995)). Implicit in the expert's establishment of the professional standard of care as the baseline for the jury, is that by way of establishing that standard the expert can assist the jury in discerning whether defendant's professional performance or conduct did not conform therewith, and thus was in breach of that duty and the proximate cause of plaintiff's injury. The only exception to the requirement of establishing the professional standard of care by way of expert testimony is where the "common knowledge and experience of the jury is sufficient to evaluate compliance with a standard of care[.]" *Delta Env. Consultants of N.C. v. Wysong & Miles Co.*, 132 N.C. App. 160, 168, 510 S.E.2d 690, 695, *disc. review denied*, 350 N.C. 379, 536 S.E.2d 70 (1999). The "common knowledge" exception to the requirement of expert testimony in professional negligence cases is implicated where the conduct is gross, or of " 'such a nature that the common knowledge of lay persons is sufficient to find the standard of care required, a departure therefrom, or proximate causation.' " *Little*, 114 N.C. App. at 568, 442 S.E.2d at 571 (quoting *Bailey v. Jones*, 112 N.C. App. 380, 387, 435 S.E.2d 787, 792 (1993)).

In the case at bar, Handex offered the lay testimony of the Vice-President of Handex's operating divisions, Mr. Gary Conway ("Mr. Conway"). Mr. Conway was a licensed civil engineer in the State of Texas. In light of his experience on approximately 50 to 100 landfill projects, he testified to what he believed was misleading information as to the quantity of excavation in the bid advertisement and subsequent contract ambiguities for the County landfill. He testified as to each contract modification request, and certain instances where he believed MES was insufficient in administering the request. Later, Handex put on MES's expert Mr. Bill Lapsley ("Mr. Lapsley"), over MES's objection, to establish the standard of care. MES had subpoenaed Mr. Lapsley to rebut any expert or other evidence Handex might have called to establish the relevant standard of care and breach thereof. During Handex's examination, it was established that Mr. Lapsley was a registered professional civil engineer in North Carolina, licensed since 1974. Particularly, Mr. Lapsley was familiar with the methods and peculiarities of earth work in Western North Carolina, and that he was familiar with the standard of care of

licensed engineers who design and observe construction for the purpose of administering contracts for these earth work jobs. On cross-examination by MES, Mr. Lapsley stated: "I can see no violations of the standard of care that this engineer did, that I would have done the same thing that this engineer did. I found no flaws in his response and how he handled the situation."

We believe the testimony of Mr. Conway neither rebuts nor raises more than a scintilla of evidence that MES breached the relevant standard of care set out by Mr. Lapsley. Viewed in its most favorable light, Mr. Conway's testimony established his opinion of what the administering engineer should have done in overseeing the bidding and contract modifications requests. It does not show, as is required to sustain the claim, what an engineer practicing under the relevant standard of care actually does, nor any specific instances of breach of *that relevant* standard. Furthermore, we cannot find that the alleged breaches to the standard of care for administering this landfill project, concerning the localized expectations and terms of art relating to excavation and landfill construction, fall within the realm of a layperson's common knowledge and experience. *Delta Env. Consultants of N.C.*, 132 N.C. App. at 168, 510 S.E.2d at 695-96. Thus, Handex failed to carry the elements of a *primae facie* case for professional negligence upon which a jury could find MES in breach of its duty and directed verdict was proper.

This assignment of error is overruled.

II.  *Costs*

[3] MES's motion for costs in this case was made pursuant to N.C. Gen. Stat. § 6-21 (2003), and it was under this authority the court awarded fees. A reading of N.C. Gen. Stat. § 6-21 reveals this statute does not authorize costs for the general contract/tort based civil action at bar. However, this was not raised in Handex's responsive motion on the issue, nor was it specifically assigned as error in this appeal. As both parties argue this issue in their briefs as if the court awarded costs under N.C. Gen. Stat. § 6-20 (2003), and because the court had authority to do so under that provision, we will frame our analysis in conformance.

N.C. Gen. Stat. § 6-20 provides that: "In other actions, costs may be allowed or not, in the discretion of the court, unless otherwise provided by law." In *Department of Transp. v. Charlotte Area Mfd. Housing, Inc.*, 160 N.C. App. 461, 469, 586 S.E.2d 780, 785 (2003), we determined:

[T]he language of N.C.G.S. § 6-20 states that "in other actions, costs may be allowed or not, in the discretion of the court . . . ." By referring to "other actions," section 6-20 apparently grants a trial judge discretion to determine whether or not costs should be taxed to a party in an action not specified in sections 6-18 and 6-19. Thus, the discretion granted is the discretion to allow costs, not the discretion to judicially create costs. Put differently, the word "discretion" qualifies the word "allowed," not the word "costs."

We then held that costs, as intended by the legislature to be used in N.C. Gen. Stat. § 6-20, is limited to those items enumerated in N.C. Gen. Stat. § 7A-305(d) (2003). *Id.* at 470, 586 S.E.2d at 785. In short, the·trial court does not have discretion to award costs under N.C. Gen. Stat. § 6-20 which are not otherwise enumerated in the exhaustive list set out in N.C. Gen. Stat. § 7A-305(d).

The following is an itemized list composing the $6,919.17 award of costs to MES: deposition costs of $1,980.61; half the expert witness fee generated by Mr. Lapsey, totaling $4,612.34; MES's portion of the mediation fee, totaling $300.00; service of process fees for trial subpoenas, totaling $17.22. In light of *Department of Transp.*, we find statutory authority for the following awards: mediation fees pursuant to N.C. Gen. Stat. § 7A-305(d)(6); witness fees of Mr. Lapsley, an expert witness under subpoena pursuant to N.C. Gen. Stat. § 7A-305(d)(1) and N.C. Gen. Stat. § 7A-314 (2003); and service of process fees for trial subpoenas, pursuant to N.C. Gen. Stat. § 7A-305(6). We find no statutory authority for the award of deposition costs.

Therefore, the order awarding costs to MES must be modified to eliminate the award of deposition costs.

### Haywood's Appeal

In their appeal, Haywood County raises the following issues: the County argues that the trial court erred in denying its motion for directed verdict and its motion for judgment notwithstanding the verdict ("JNOV"); that the court erred denying its motion to amend the judgment, and in the alternative, its motion for a new trial. Because we find the court should have granted directed verdict on some of the claims submitted to the jury, and that the judgment was based in part on an irregularity at trial not clarified by the record, we grant a new trial in accordance with the mandate set forth below.

## I. Denial of Directed Verdict and JNOV

### A. Standard of Review

Upon review of the trial court's denial of Haywood's motion for directed verdict and JNOV, we apply that standard as set out in Handex's appeal from MES's directed verdict.

### B. Evidence of Handex's Claims against the County

The County argues there was insufficient evidence to submit to the jury the question of any of the numerous contractual breaches alleged by Handex. These alleged breaches fall into two categories: those *not* submitted to MES as a claim for a contract modification—delay in the notice to proceed, lost timber value and related delay, and additional time and travel of Handex's management; and those claims submitted to MES for approval as contract modifications—additional rock and other soil excavation, additional liner, additional undercutting, and weather-related delays.

### 1. Claims Not Submitted to MES

[4] The jury was allowed to consider claims first raised by Handex in this litigation contending the County caused delay issuing the "Notice to Proceed" the construction, and causing damages to Handex. Section 2.02 of the bid provided "the Bid will remain subject to acceptance for (90) days after Bid opening[.]" The Supplemental Conditions provide, "[t]he Contract Times will commence to run on the day indicated in the Notice to Proceed. A Notice to Proceed may be given at anytime within 60 days after the Effective Date of the Agreement." Though the record is unclear, the bid opening seems to have occurred sometime in late August of 2000. Within the 90-day time period, the County awarded Handex's bid for Alternative 1 on or about 14 September 2000, and later contracted with Handex on Alternative 2 on or about 13 October 2000. In a letter dated 8 November 2000, MES gave Handex the "Notice To Proceed" as of 13 November 2000. Therefore, this was timely under the terms of the bid and contract, and there was no evidence of breach of contract or claim made for a time extension due to the agreed change from Alternative 1 to Alternative 2. The trial court erred in not granting directed verdict on this claim for breach.

[5] The next issue not formally raised as a "claim" under the contract was related to timber ownership on the construction site. The

County, in preparation for the landfill, clear-cut 20 acres of timber on the landfill site after the bids had been accepted for the landfill. This was done despite section 1.01.1(d) of the General Conditions, providing that "all timber . . . shall become property of the Contractor." We believe this to be a clear breach by the County of this provision. The expected timber proceeds were likely to be used by contractors to submit lower bids. The County claims that Handex failed to preserve this claim by submitting it as a formal claim to MES as provided by section 9.09 and that it was untimely under section 10.05 of the General Conditions. We disagree that these provisions preclude Handex's ability to later litigate this claim for breach. We find the General Conditions ambiguous as to whether the question of whose property the timber was at the time of the clear cutting falls within the purview of a "dispute" or "other matter relating to the *acceptability* of the work" or "the *performance* of the work" as set out in section 10.05. (Emphasis added.) Furthermore, because any delay in the removal of the remaining stumps was proximately caused by this breach, that issue was also properly allowed to be presented to the jury. Therefore, the court was correct in allowing those issues involving timber removal to be determined by the jury, despite first being raised in this litigation.

**[6]** Lastly, the jury was allowed to consider evidence of claims related to additional management costs and travel time costs caused by the County's alleged breach during the performance of the contract. These costs were never sought by Handex as contract modifications made through the change order process, and were evidenced only by a description of the revised contract value in one of Handex's numerous exhibits. The transcript reflects that these additional travel and management costs were related to the performance of obligations of the contract or attempted contract modifications. Therefore, as a condition precedent for raising them in subsequent litigation, they should have been requested as part of a change order for the work to which they were directly related. Judging by the eight change orders sought under this construction contract, the County had clearly not waived the requirement of section 12.01 of the General Conditions that additional cost requests must be made through change orders. Therefore, we believe evidence of these additional management and travel costs were improperly submitted to the jury as evidence of damages, and hold the trial court erred in not granting directed verdict on these claims of breach.

### 2. *Claims Submitted to MES as Change Orders*

[7] The first change order denied by the County was change order #2 requesting additional money and time for blasting and rock excavation. At issue was the language of Addendum 1 to the construction contract, stating that "costs for removal of rock" encountered in the excavation area would be negotiated at the time of removal. However, Addendum 2, sealed by MES a day after Addendum 1, states excavation material in the bid is "unclassified." Mr. Lapsley, the only expert witness before the court, stated on cross-examination that "unclassified" meant the contractor would not be paid for any particular type of material they were removing. In response, Handex put on evidence that showed that another bidder's inquiry of MES into the effect of Addendum No. 2, it was recorded that "[a]ddendum 2—rock will still be paid for if encountered." Upon this conflicting evidence, we believe Addendums 1 & 2, when read together, raise an ambiguity in the contract and therefore provided a question to be properly submitted to the jury. *See Crider v. Jones Island Club, Inc.*, 147 N.C. App. 262, 266-67, 554 S.E.2d 863, 866-67 (2001), *disc. review denied*, 356 N.C. 161, 568 S.E.2d 192 (2002) (Where we reaffirmed the long-standing rule of contract interpretation that when a contract is ambiguous, deciphering its potential interpretations is for the jury). We note that no days should have been credited for the rock excavation, as Addendum 1 clearly only allowed for negotiation of cost, but not additional time.

Change orders #3 and #8 denied by the County both related to the contract's provisions governing abnormal weather conditions. Change order #3 sought additional time of 30 days due to poor weather conditions. The contract provided that "abnormal weather conditions" were to be determined based upon the National Weather Service's thirty-year average. The evidence before the jury provided two different interpretations of what constituted the time frame for measuring these conditions, thus affecting calculations of whether it was above or below the National Weather Service's thirty-year average. It was also unclear, as testified to by Mr. Conway, whether the "average" was to consider days of rain, or inches of rain, and where the statistical data for the weather conditions was to be collected. We find this means of determining "abnormal weather conditions" ambiguous. Therefore, for change order #3, we believe there was sufficient evidence of an "abnormal weather condition" as described in Handex's weather logs and data to give the issue to the jury. However, concerning change order #8's request for time *and* price adjustment,

Handex's request for $80,000.00 was not an offered remedy under the express contract terms set out in section 12.05(A) of the General Conditions ("an equal amount of time lost due to [abnormal weather conditions is the] exclusive remedy." Handex was required to get insurance under the contract to cover such costs pursuant to General Condition 5.06. Furthermore, the contract clearly states that claims for more time due to "abnormal weather conditions" would only be considered when brought "within the Contract Times" as stated in 12.03 of the General Conditions. Their request, made 10 July 2001, was well outside of the contract time. Therefore, the requests in change order #8 was governed by the express terms of the contract for which there was no issue of fact to be decided by a jury.

Change order #4 sought by Handex was for additional under-cutting of 2,532 cubic yards of unsuitable soils and backfilling in the subgrade. Handex requested $17,121.60 with a time extension of 14 calendar days. MES approved the request for excavation of the unsuitable soils, though modifying it to allow only 3 days and $13,470.24. The modification was made because the contract specifications stated that cost of backfilling was already included in the cost of excavation. Despite MES's recommendation, the County denied the claim as authorized by MES, and Handex appealed. Mr. Lapsley testified that he believed Handex was entitled to the claims for time and money as modified by MES. We believe that on this issue, in light of the fact MES approved the change order as modified, there was more than a scintilla of evidence upon which a jury was properly allowed to determine whether the County had breached the contract denying the change order as modified.

Change order #5 sought by Handex was for $28,112.00 and 14 calendar days based upon a need for an increase in the liner area square footage for the landfill phase. The bid for the liner system was at the unit quantity of 448,000 square feet. The contract states that payment will only be made for "actual number of units incorporated in the work," and that "[m]easurement for payment of the Composite Liner System . . . will be based on . . ." "the plane whose boundaries are the anchor and liner extension trenches," and "the cost shall include an appropriate allowance for seam overlap, wrinkles, expected wastage, slopes, irregular shapes, etc." At trial, Mr. Lapsley's testimony provided that the "appropriate allowances" should have been considered in the bid itself, and, therefore, MES properly denied the change order. For their change order, Handex attached a land survey stating that the actual verified surface area of the landfill was 460,550 square

feet for the clay liner, and 485,300 square feet for the membrane liner surface area. We agree with Mr. Lapsley and the County. The terms "plane" and "expected wastage" plainly indicated that the liner area required for the landfill was a figure to be incorporated into the bid, with the "appropriate allowance" to be estimated in addition to the 448,000 square feet of the landfill's plane. Therefore, we do not believe there was sufficient evidence of breach to present this issue to the jury.

Change order #6 by Handex sought neither additional time nor costs. Rather, they requested to take cover soil from the borrow area outside the clearing limits without "seeding or landscaping" the area. This was in express contravention of the terms of the Project Specification section 3.03, requiring that in such instances "[r]eclamation, which will include but not be limited to seeding and mulching . . . at the Contractor's expense." The court erred in failing to grant directed verdict on this claim of breach.

Change order #7 sought by Handex was for the approval of $196,655.00 and an additional 29 workdays. The basis of this request was, by Handex's calculations, that they had encountered 38% more excavation and 92% more berm construction in the field than was depicted in the bid and contract. We find the bidding provisions incorporated in the contract and the relevant contractual provisions govern this issue. Handex submitted a lump sum bid, without using any local survey, for the amount and cost of earth work it estimated the landfill project required. This figure was 165,000 cubic yards, approximately 5,000 yards more than what was estimated in the bid advertisement. The record indicates that after their low bid had been awarded, Handex later hired Mr. Randy Herron, a local surveyor, to calculate the earth work quantities of the project, based on the documents MES provided for the *initial bid*. In the Instructions to the Bidder portion of the contract, section 4.07 stated: "It is the responsibility of the Bidder before submitting a Bid to: Obtain and carefully study (or assume responsibility for doing so) all additional supplemental examinations . . . which may affect cost, progress, or performance . . ." and "to agree at the time of submitting its Bid that no further examinations . . . are necessary for the determination of its bid for performance." Moreover, when Handex discovered the earth work was more significant than they had bid, instead of halting excavation and putting the County and MES on notice as required by the General Conditions section 4.03 of the contract, they continued to excavate. In sum, in addition to not doing their due diligence during

the bidding process, Handex did not comply with General Conditions requiring they halt excavation when making a claim that the site differs materially from that represented in the bid and contract. Therefore, the trial court should have granted directed verdict on the claim of additional excavation because the County's denial of Handex's claim was authorized under the terms of the contract and made without breach. On facts akin to those at bar, we affirmed a trial court's grant of JNOV on the seasoned principle of construction/contract law: "[t]hat plaintiff encountered difficulties which it failed to anticipate when making its bid did not entitle it to the increased compensation it now seeks to recover." *Brokers, Inc. v. Board of Education*, 33 N.C. App. 24, 30, 234 S.E.2d 56, 60, *disc. review denied*, 293 N.C. 159, 236 S.E.2d 702 (1977)

### C. Summary of Claims for Which Directed Verdict was Improper

In this case, the evidence of claims which was proper for the jury to consider should have been limited to the following: (1) lost timber revenue from the County's clear-cutting of the landfill site and damages related to the stump removal; (2) evidence of the claim for rock removal and blasting and related damages due to its denial of negotiating its price as stated in Addendum 1 (change order #2); (3) evidence of additional time as authorized by the contract for "abnormal weather conditions" which had occurred within the scope of the contract's time for Substantial Completion and Final Payment (change order #3); and lastly (4) undercutting of unsuitable soils, as approved by MES (change order #4).

### II. Denial of Motion for Amended Judgment/New Trial

[8] The County also motioned for a new trial and amended judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 59(a)(7) (2003). The County argued that, because some, if not all, of Handex's claims were not supported by the evidence and therefore that the single-figure verdict awarded by the trial court was not authorized, a new trial must be granted. We agree.

Rule 59(a)(7) of the North Carolina Rules of Civil Procedure provides that grounds for a new trial may be when "[i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law." N.C. Gen. Stat. § 1A-1, Rule 59(a)(7) (2003). "An appellate court's review of a trial judge's discretionary ruling denying a motion to set aside a verdict and order a new trial is limited to a determination of

whether the record clearly demonstrates a manifest abuse of discretion by the trial judge." *Pittman v. Nationwide Mutual Fire Ins. Co.*, 79 N.C. App. 431, 434, 339 S.E.2d 441, 444, *disc. review denied*, 316 N.C. 733, 345 S.E.2d 391 (1986). A new trial as to damages only should be ordered if the damage issue is separate and distinct from the other issues and the new trial can be had without danger of complication with other matters in the case. *Robertson v. Stanley*, 285 N.C. 561, 568-69, 206 S.E.2d 190, 195 (1974). It must be clear that the error in assessing damages did not affect the entire verdict. *Id.* If it appears the damages awarded were from a compromise verdict, a new trial on damages alone should not be ordered. *Weyerhaeuser Co. v. Supply Co.*, 292 N.C. 557, 566, 234 S.E.2d 605, 610 (1977).

As set out above, we have determined those claims raised by Handex which were properly submitted to the jury, and those claims which were clearly governed by the terms of the contract. In light of the single-figure jury verdict, we cannot determine whether the jury awarded damages pursuant to any of the four claims properly submitted to the jury, and we are therefore constrained to grant a new trial to determine both the question of liability and damages as to these four claims. *Weyerhaeuser Co.*, 292 N.C. at 566, 234 S.E.2d at 610 (where the Supreme Court modified this Court's grant of a new trial on the issue of damages relating to counterclaims under a contract, and granted a new trial on the question of liability as well).

[9] Also at issue in this appeal is the propriety and amount of liquidated damages and extra engineering fees awarded to the County by the jury's verdict. The County, under the terms of the contract, began retaining liquidated damages for the days Handex was overdue for Substantial Completion, at $1,000.00 per day, and overdue for Final Payment, at $500.00 per day. In addition, the County retained amounts it attributed to extra engineering fees caused by Handex's delay. In total, the monies held by the County at the time the jury rendered its verdict, including interest, was approximately $153,107.60. The jury's verdict awarded the County $16,000.00 in liquidated damages, and $8,880.00 for extra engineering fees.

We first address the extra engineering fees. The trial court, though allowing the jury to assess them for purposes of appellate review, ordered that under North Carolina's jurisprudence the County was not entitled to the engineering fees in addition to liquidated damages. The trial court was correct in this ruling. Our Supreme Court has long held that liquidated damages, when not a penalty, may be awarded as both parties' measure of the estimated, actual damages

that would arise in the event of a breach. *Knutton v. Cofield*, 273 N.C. 355, 363, 160 S.E.2d 29, 35-36 (1968). Therefore, while liquidated damages may still be awarded even if no actual damages arise from the breach, they cannot be awarded in addition to actual damages because this would constitute double recovery. *Id.* Therefore, at any new trial, the liquidated damages provision of the contract shall be deemed as a substitute for any actual damages suffered by the County due to Handex's delay.

[10] Turning next to the liquidated damages that were awarded to the County at trial. After the jury returned their verdict with the $16,000.00 sum, the jury was discharged. Handex then raised the following issue:

> [HANDEX'S ATTORNEY]: I believe that leaves us with the issue of the $160,000 or so that the County is holding. I am assuming that the answer to question number two is a true damages award and is not inclusive of the $160,000.

Handex's attorney at that time requested another question be submitted to the jury as to whether the County was required to return the difference of the monies it had retained as liquidated damages and engineering fees, and the $16,000.00 awarded by the jury. To this the court concluded:

> THE COURT: . . . If the plaintiff had the money, then I can see that as creating a real problem. I can't—when you think about it though, there's no way they could have intended that the $201,000 be increased by the money that [the County is] holding. It wouldn't make sense that way.

The transcript from a subsequent hearing held before the trial court issued its judgment was lost and is not part of the record on appeal. There was, however, the affidavit of one juror expressing what he alleged the verdict to encompass. Despite its initial strict reading of the jury's verdict, in its judgment order, the trial court interpreted the verdict to encompass $137,107.60 to be recovered by Handex as the amount withheld by the County over and above the jury's finding of $16,000.00 liquidated damages.

> Vital to a party's right to a jury, when so requested, is the verdict:

> A verdict is a substantial right. A trial judge in the due and orderly administration of justice has the power to set a verdict aside in his discretion or as a matter of law, and it is his duty to

do so when a palpable miscarriage of justice would result. The ultimate objective of the law is to guarantee justice to all the parties. A trial is the process ordained and sanctioned for realizing that objective. A jury in proper cases may correct its verdict with the approval of the court in the event the verdict does not correctly express the actual agreement of the jury.

*Bundy v. Sutton*, 207 N.C. 422, 427, 177 S.E. 420, 422 (1934). Our courts have consistently held that the general rule prohibiting jurors from impeaching their own verdict does not prevent the reception of evidence from jurors on the issue of whether a clerical error was made by the jury in recording their verdict. *Chandler v. U-Line Corp.*, 91 N.C. App. 315, 324-25, 371 S.E.2d 717, 722-23, *disc. review denied*, 323 N.C. 623, 374 S.E.2d 583 (1988). In *Chandler*, we held that where the trial court sets aside or amends a verdict pursuant to Rule 59 after the jury has been discharged, there must be evidence that all jurors are in agreement that the verdict sheet did not represent their intentions. *Id.*

In the case at bar, without more, we do not believe the court had authority to alter the verdict so substantially. However, because we are granting a new trial on Handex's remaining claims, the question of liquidated damages and monies retained by the County may again be argued and clarified.

## Conclusion

The mandate of this opinion, based upon our thorough review of the transcripts, record, briefs, and exhibits, is as follows: The court's grant of directed verdict for MES is affirmed on the claims of breach of contract and professional negligence. The court's award of costs shall be amended to allow only those costs permitted by statute. Concerning Handex's numerous contract claims against the County, a new trial is appropriate for those four claims for which there was sufficient evidence to survive directed verdict. Additionally, concerning the County's counterclaims for breach and liquidated damages, these too may be re-litigated. At any new trial, there shall be clear instruction as to the following: that any liquidated damages found under the contract cannot be increased by actual damages proved at trial; and that the verdict specify whether the amount of liquidated damages set by the jury is in lieu of the $153,107.60 retained by the County with the balance to be returned to Handex, or if it is an award of damages in addition to those monies.

Affirmed in part, modified in part, reversed in part, and new trial.

Judges TIMMONS-GOODSON and HUNTER concur.